B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> Barbara H. Katz, Chapter 7 Trustee | **DEFENDANTS** <br> William M. Anderson and Mary Ann Anderson |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Kroll, McNamara, Evans & Delehanty, LLP <br> 65 Memorial Road, Suite 300, West Hartford, CT 06107 <br> 860-561-7070 | **ATTORNEYS** (If Known)  *(Debtor ONLY) <br> George C. Tzepos, Esq. <br> 444 Middlebury Road, Middlebury, CT 06762 <br> 203-598-0520 |
| **PARTY** (Check One Box Only) <br> ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor  ☐ Other <br> ☒ Trustee | **PARTY** (Check One Box Only) <br> ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor  ☐ Other <br> ☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) <br> Constructive trust and fraudulent transfers (11 U.S.C. Sections 544, 550, Conn. Gen. Statute Sections 52-552E and 52-552f, 548, 550). ||

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ [2] 13-Recovery of money/property - §548 fraudulent transfer
☒ [1] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||
|---|---|---|
| NAME OF DEBTOR<br>William M. Anderson | BANKRUPTCY CASE NO.<br>15-30458 ||
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>New Haven | NAME OF JUDGE<br>Ann M. Nevins |

| RELATED ADVERSARY PROCEEDING (IF ANY) |||
|---|---|---|
| PLAINTIFF<br><br>The Cadle Company | DEFENDANT<br><br>William M. Anderson | ADVERSARY PROCEEDING NO.<br>16-03033 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Connecticut | DIVISION OFFICE<br>New Haven | NAME OF JUDGE<br>Ann M. Nevins |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| *[signature]* |

| DATE<br><br>March 10, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>C. Donald Neville, Esq. |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### NEW HAVEN DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 7 |
| | ) | |
| WILLIAM M. ANDERSON, | ) | CASE NO. 15-30458 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BARBARA H. KATZ, CHAPTER 7 TRUSTEE, | ) | ADV. PROC. NO. _____ |
| Trustee. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM M. ANDERSON AND MARY ANN ANDERSON, | ) | |
| Defendants | ) | |

## COMPLAINT

BARBARA H. KATZ, not individually, but solely as trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of WILLIAM M. ANDERSON (the "**Debtor**"), by and through her undersigned attorneys, states as follows:

### JURISDICTIONAL ALLEGATIONS

1. The Debtor commenced the above captioned bankruptcy case (the "**Case**") on March 27, 2015 (the "**Petition Date**") by filing a voluntary petition for relief under chapter 7 of title 11, United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Connecticut, New Haven Division.

2. The Trustee was appointed as the trustee in the Case pursuant to § 701 of the Bankruptcy Code.

—1—

3. The Trustee is duly qualified and has all the powers of a trustee under, among other provisions, Section 704 of the Bankruptcy Code.

4. Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(a).

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

6. This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

## DEFENDANTS AND ALLEGATIONS COMMON TO ALL COUNTS

7. The Debtor is an individual and resident of the State of Connecticut.

8. Defendant Mary Ann Anderson **("Mary Ann")** is an individual and resident of the State of Connecticut. Mary Ann married the Debtor in 1972.

9. The Debtor claims that he and Mary Ann divorced. However, they have continued to maintain a marriage-like relationship.

10. For example, Mary Ann made the Debtor her executor under her will in 2010. Equally, for decades, the Debtor has referred to Mary Ann as his wife and made representations that he was married.

11. The Debtor's bankruptcy schedules reflect over $4,500,000.00 in debts and 7,500.00 in assets. The schedules also are grossly inaccurate and misleading.

12. The Debtor would frequently try to evade and mislead creditors by claiming property and/or businesses were owned by Mary Ann, when, in fact, Mary Ann only nominally owned property and/or businesses, while the Debtor retained all actual and equitable ownership interests in said property and/or businesses (the **"Scheme"**).

13. Through his Scheme, Mary Ann would purchase assets and/or use the proceeds of the Scheme for the benefit of the Debtor.

14. First, Mary Ann owns a company called Classic Car Restoration (also known as Classic Car Restoration, LLC) which is in the business of restoring classic and/or vintage cars for eventual resale and/or for specific customers (the **"Company"**).

15. Based upon available information, Mary Ann did not have any experience restoring classic and/or vintage cars prior to opening the Company.

16. Mary Ann also spends virtually no time at the Company.

17. The Debtor, however, was in the business of restoring classic and/or vintage cars for well over four decades.

18. In other words, Mary Ann, the Debtor's ex-wife owns and operates a company that is precisely in the same line of business the Debtor was in for decades.

19. Moreover the timing of the opening of the Company – as well as the Debtor's own sworn statements – demonstrate that the Company is owned by the Debtor.

20. In or about November 1996, the Debtor was convicted of the sale of stolen cars and car parts. He was sentenced to seven (7) years, but upon information and belief, only served five (5) years in prison. That would mean he was released from prison in or about 2001-2002.

21. After getting out of prison, the Debtor claims he has not worked and has not generated any money for creditors.

22. At his deposition, the Debtor admitted he spends a great deal of time at the Company, but claims that he just "hangs out" at the Company, does not do any work for the Company, and does not receive any money from the Company.

23. However, testimony and documents from third parties demonstrate that the Debtor was (and remains) intimately involved in operating and managing the Company, including attending meetings in connection with the Company.

24. More to the point, the Debtor's own credit application to purchase a vehicle in 2012 (the "2012 Credit Application") unequivocally states that he is the actual owner of the Company and that he received hundreds of thousands of dollars a year from the Company.

25. Notably, that same credit application from 2012 reported that he has owned and operated the Company for ten years.

26. Working backwards, that means he opened the company in or about 2001-2002 – which was precisely when he was released from prison.

27. The income and proceeds of the operation of the Company were "run through" Mary Ann as a way to shield the income and proceeds from creditors and from the Trustee.

28. Second, Mary Ann owns real property located at 1058 Wolcott Street, Waterbury, Connecticut which is the location of the Company (the **"Commercial Property"**).

29. The Commercial Property was purchased with income and proceeds derived from the Debtor and/or the Company and/or the debt service and maintenance for the Commercial Property was (and continues to be) paid for through income and proceeds from the Company.

30. The Commercial Property is an asset of the Debtor.

31. Third, Mary Ann owns real property located at 2 Silver Pond, Wolcott, Connecticut (the **"Home"**).

32. The Home was purchased jointly by the Debtor and Mary Ann decades ago.

33. Shortly before or during the police investigation that resulted in the Debtor's imprisonment, he transferred his interest in the Home to Mary Ann.

34. However, the debt service and maintenance for the Home was (and continues to be) paid for through income and proceeds from the Company.

35. At his deposition, the Debtor claims he does not live at the Home and has not lived at the Home for years.

36. Nonetheless, the Debtor used the Home as his mailing address for years and, upon information and belief, has actually resided at the Home.

37. Equally, the 2012 Credit Application unequivocally states that the Debtor owns the Home, has owned it for years, and pays the mortgage on the Home.

38. The Home is an asset of the Debtor.

39. Fourth, Mary Ann owns real property located at 206 East Washington Street, Deland, Florida (the **"Florida Property"**).

40. The Florida Property was purchased with income and proceeds derived from the Company and/or the debt service and maintenance for the Florida Property was (and continues to be) paid for through income and proceeds from the Company.

41. Just like with the Home, the Debtor claims he does not live at or use the Florida Property and that Mary Ann would not let him live there.

42. Nonetheless, when the Debtor moved to Florida for a while, he resided at the Florida Property and used that property as his mailing address for his Florida Driver's License.

43. Fifth, Mary Ann owns personal property in Connecticut and Florida and possibly elsewhere (the **"Personal Property"**).

44. The Personal Property was purchased with income and proceeds derived from the Company and/or the debt service and maintenance for the Personal Property was (and continues to be) paid for through income and proceeds from the Company.

45. The Company, the Commercial Property, the Home, the Florida Property, and the Personal Property, including (without limitation) the proceeds of all such assets and property, (collectively, the **"Assets"**) are all property of the Estate, in whole or in part, and should be used for the payment of creditors.

46. The vesting of the Assets in the name of Mary Ann was a deliberate and intentional effort to hide the Assets from creditors.

47. Mary Ann participated in the Scheme outlined above.

## ANY APPLICABLE STATUTES OF LIMITATIONS WERE TOLLED

48. The Defendants intentionally and fraudulently concealed the Scheme and their conduct.

49. The Plaintiff remained ignorant of the causes of action until sometime within the four years of commencement of this action.

50. The Plaintiff's ignorance was not due to a lack of diligence.

51. The Defendants took affirmative steps to prevent the discovery of the Scheme.

52. The Scheme was self-concealing.

53. The Plaintiff pursued her rights diligently.

54. The extraordinary circumstances of the Scheme and the Defendants' efforts to the Scheme prevented filing of this action earlier.

55. The Defendants had and have actual awareness of the facts necessary to establish the Plaintiff's cause of action.

56. The Defendants concealed the facts for the purpose of obtaining delay on the Plaintiffs' part in filing a complaint on this action.

57. Pursuant to Conn. Gen. Stat. § 52-595, the applicable causes of action are tolled.

58. Under equitable principles, the applicable causes of action are tolled.

## **COUNT ONE:** **ACTION FOR IMPOSITION OF CONSTRUCTIVE TRUST AND OTHER RELIEF.**

1-58. The Trustee restates and incorporates the above Paragraphs 1-58 as if set forth more fully in this Count One.

59. The Debtor and Mary Ann stand in a confidential relationship with each other.

60. The Debtor and Mary Ann claim to be divorced, but have continued to maintain a relationship. Upon information and belief, the alleged divorce was part of the Scheme.

61. The Scheme consisted of and relied upon fraud, misrepresentations, imposition, circumvention, artifice, or concealment or abuse of confidential relations.

62. Although Mary Ann holds bare legal title to the Assets, she is subject to an equitable duty to convey it to the Trustee, her successors and assigns, because Mary Ann would be unjustly enriched if she were permitted to retain it.

63. The Debtor has continued to enjoy the fruits of the Assets, including (without limitation) operation of the Company, profits from the Company, use of the Commercial Property, use of the Home, use of the Florida Property, and use of the Personal Property.

64. It offends equity and good conscious for the Debtor to enjoy and retain ownership of the Assets (and the fruits of the Assets) at a time when the Debtor's bankruptcy estate lacks meaningful assets with which to pay creditors.

65. By reason of the foregoing, the Trustee may, by this proceeding, hold Defendant Mary Ann personally liable to the Trustee, her successors and assigns, for the value and amount of the Assets.

66. By reason of the foregoing, the Debtor and Mary Ann have engaged in conduct that has wrongfully harmed the Trustee (and the creditors of the Debtor's estate).

67. By reason of the foregoing, Mary Ann has been unjustly enriched to the detriment of the Trustee (and the creditors of the Debtor's estate).

68. By reason of the foregoing, a constructive trust should be imposed upon the Assets and Mary Ann should be required to hold the same for the benefit of the Trustee (and the creditors of the Debtor's estate) and/or transfer same to the Trustee, her successors and assigns.

69. By reason of the foregoing, and pursuant to 11 U.S.C. §§ 544 and 550, a money judgment should enter in favor of the Trustee, her successors and assigns and against Mary Ann for the value of the Assets.

**COUNT TWO:**     **LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO CONN. GEN. STAT. § 52-552E(a)(1), AND 11 U.S.C. §§ 544 AND 550 (ACTIVE FRAUD)**

1-69. The Trustee restates and incorporates the above Paragraphs 1-69 as if set forth more fully in this Count Two.

70. At all relevant times, the Debtor has been (and is) a "debtor" as that term is defined in Conn. Gen. Stat. § 52-552b(6).

71. At all relevant times, the Debtor has owed (and continues to owe) a "debt" to the Trustee, by virtue of her strong arm powers under 11 U.S.C. § 544, as that term is defined in Conn. Gen. Stat. § 52-552b(5).

—8—

72. At all relevant times, the Trustee, by virtue of her strong arm powers under 11 U.S.C. § 544, has been a "creditor" of the Debtor as that term is defined in Conn. Gen. Stat. § 52-552b(4).

73. At all relevant times, Mary Ann has been (and continue to be) an "insider" as that term is defined in Conn. Gen. Stat. § 52-552b(7).

74. At all relevant times, the Debtor and Mary Ann were (and continue to be) "relatives" as that term is defined in Conn. Gen. Stat. § 52-552b(11).

75. The Trustee claim against the Debtor, by virtue of her strong arm powers under 11 U.S.C. § 544, arose before the Assets were transferred (the **"Transfer"**).

76. The Transfer was made with actual intent to hinder, delay or defraud any creditor of the debtor because: (1) The Transfer was to an insider; (2) the Debtor retained possession or control of the Assets after the Transfer; (3) the Transfer was concealed; (4) before the Transfer was made, the Debtor had been sued or threatened with suit; (5) the transfer was of substantially all the Debtor's assets; (6) the Debtor removed or concealed assets; (7) the value of the consideration received was not reasonably equivalent to the value of the Assets; (8) the Debtor was insolvent or became insolvent shortly after the Transfer was made; and (9) the Transfer occurred shortly before or shortly after a substantial debt was incurred.

77. The aforesaid acts and conduct constitute a fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552e(a)(1).

78. Pursuant to Conn. Gen. Stat. § 52-552h, the Trustee is entitled to, among other things: (a) an avoidance of the Transfer to the extent necessary to satisfy all claims; (b) an injunction against further disposition by any of the Defendants; (c) money damages against Defendant Mary Ann; and (d) a constructive trust against the Assets.

**COUNT THREE:** **LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO CONN. GEN. STAT. § 52-552E(a)(2), AND 11 U.S.C. §§ 544 AND 550 (ACTIVE FRAUD)**

1-78.    The Trustee restates and incorporates the above Paragraphs 1-78 as if set forth more fully in this Count Three.

79.    The Transfer was made without the Debtor receiving reasonably equivalent value.

80.    The Transfer was made at a time when the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

81.    The aforesaid acts and conduct constitute a fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552e(a)(2).

82.    Pursuant to Conn. Gen. Stat. § 52-552h, the Trustee is entitled to, among other things: (a) an avoidance of the Transfer to the extent necessary to satisfy all claims; (b) an injunction against further disposition by any of the Defendants; (c) money damages against Defendant Mary Ann; and (d) a constructive trust against the Assets.

**COUNT FOUR:** **LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO CONN. GEN. STAT. § 52-552f(a), AND 11 U.S.C. §§ 544 AND 550 (CONSTRUCTIVE FRAUD)**

1-82.    The Trustee restates and incorporates the above Paragraphs 1-82 as if set forth more fully in this Count Four.

83.    The Transfer is constructively fraudulent.

84. The Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer or obligation.

85. The aforesaid acts and conduct constitute a fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552f(a).

86. Pursuant to Conn. Gen. Stat. § 52-552h, the Trustee is entitled to, among other things: (a) an avoidance of the Transfer to the extent necessary to satisfy all claims; (b) an injunction against further disposition by any of the Defendants; (c) money damages against Defendant Mary Ann; and (d) a constructive trust against the Assets.

**COUNT FIVE:    LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550**

1-86. The Trustee restates and incorporates the above Paragraphs 1-86 as if set forth more fully in this Count Five.

87. The Transfer (or parts of the Transfer) within two years before the Debtor filed his bankruptcy petition.

88. The Transfers were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

89. By reason of the foregoing, Defendant Mary Ann is personally liable to the Trustee, and her successors and assigns, to the extent of the aggregate value and/or dollar amount of all Transfer, all within the meaning of, and as contemplated by, 11 U.S.C. §§ 548 and 550.

84. The Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer or obligation.

85. The aforesaid acts and conduct constitute a fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552f(a).

86. Pursuant to Conn. Gen. Stat. § 52-552h, the Trustee is entitled to, among other things: (a) an avoidance of the Transfer to the extent necessary to satisfy all claims; (b) an injunction against further disposition by any of the Defendants; (c) money damages against Defendant Mary Ann; and (d) a constructive trust against the Assets.

**COUNT FIVE:    LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550**

1-86. The Trustee restates and incorporates the above Paragraphs 1-86 as if set forth more fully in this Count Five.

87. The Transfer (or parts of the Transfer) within two years before the Debtor filed his bankruptcy petition.

88. The Transfers were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

89. By reason of the foregoing, Defendant Mary Ann is personally liable to the Trustee, and her successors and assigns, to the extent of the aggregate value and/or dollar amount of all Transfer, all within the meaning of, and as contemplated by, 11 U.S.C. §§ 548 and 550.

**COUNT SIX:** **LIABILITY OF TRANSFEREE FOR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 544 AND 550**

1-89. The Trustee restates and incorporates the above Paragraphs 1-89 as if set forth more fully in this Count Six.

90. The Debtor received less than a reasonably equivalent value in exchange for the Transfer

91. The Debtor was insolvent on the date that such Transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

92. The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any remaining property was unreasonably small.

93. The Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

94. The Debtor made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

95. By reason of the foregoing, Defendant Mary Ann is personally liable to the Trustee, and her successors and assigns, to the extent of the aggregate value and/or dollar amount of all Transfer so made by the Debtor to Mary Ann, all within the meaning of, and as contemplated by, 11 U.S.C. §§ 548 and 550.

WHEREFORE, the Plaintiff Trustee claims:

1. Money Damages;

2. A finding, judgment, and decree that the Assets are held in constructive trust for the benefit of the Trustee and/or the bankruptcy estate;

3. Pre-judgment Interest;

4. Post-judgment Interest;

4. Costs;

5. Avoidance of the Transfer to the extent necessary to satisfy claims;

6. An attachment or other provisional remedy against the Assets or other property of the Defendants in accordance with the procedure prescribed by Chapter 903a;

7. An injunction against further disposition by both Defendants;

8. A finding, judgment, and decree that the Assets belong to the Trustee;

9. Any other relief at law or in equity.

March 10, 2017                                    Respectfully submitted,

                                                  BARBARA H. KATZ, not individually, but
                                                  solely as trustee of the bankruptcy estate of
                                                  WILLIAM M. ANDERSON

                                                  By: /s/ C. Donald Neville
                                                      One of Her Attorneys
                                                      C. Donald Neville
                                                      Kroll McNamara Evans & Delehanty, LLP
                                                      65 Memorial Road, Suite 300
                                                      West Hartford, CT 06107
                                                      Main: 860.561.7070
                                                      Direct: 860.761.1116
                                                      dneville@kmelaw.com
                                                      www.kmelaw.com| vCard