UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-30458 (AMN) |
| | : | |
| WILLIAM M. ANDERSON, III, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| BARBARA H. KATZ, | : | |
| CHAPTER 7 TRUSTEE | : | |
| *Plaintiff* | : | AP No.: 17-3008 (AMN) |
| | : | |
| v. | : | |
| WILLIAM M. ANDERSON, | : | |
| MARY ANN ANDERSON, | : | |
| *Defendants* | : | |
| | : | Re:  AP-ECF No. 7 |

MEMORANDUM OF DECISION AND ORDER
REQUIRING A MORE DEFINITE STATEMENT

*Parties*

| | |
|---|---|
| Barbara H. Katz | C. Donald Neville, Esq. |
| *Plaintiff* | Kroll McNamara Evans & Delehanty, LLP |
| | 65 Memorial Road, Suite 300 |
| | West Hartford, CT 06107 |
| | |
| William M. Anderson | *Pro se* |
| *Defendant* | 21 Quentin Street |
| | Waterbury, CT 06706 |
| | |
| Mary Ann Anderson | Timothy D. Miltenberger, Esq. |
| *Defendant* | Coan, Lewendon, Gulliver & Miltenberger, LLC |
| | 495 Orange Street |
| | New Haven, CT 06510 |

Before the court is defendant Mary Ann Anderson's ("Ms. Anderson") motion for

dismissal of the bankruptcy trustee's complaint for failure to state a claim pursuant to

Fed.R.Civ.P. 12(b)(6), or alternatively, an order requiring a more definite statement

pursuant to Fed.R.Civ.P. 12(e) (the "Motion"), AP-ECF No. 7[1]. See, Fed.R.Bankr.P.

7012. For the reasons that follow, the Motion is granted in part so that the plaintiff,

Chapter 7 Trustee Barbara H. Katz ("Trustee"), may file an amended complaint on or

before July 25, 2018. If an amended complaint is not timely filed, then the complaint will

be dismissed as to Ms. Anderson.

I.     Introduction

William M. Anderson (the "Debtor" or "Mr. Anderson"), filed a chapter 7 petition

(the "Main Case") on March 27, 2015. ECF No. 1. On March 10, 2017, the Trustee

commenced this adversary proceeding by filing a complaint against the Debtor and Ms.

Anderson (his alleged ex-wife) claiming, generally, that over many years and perhaps

decades they engaged in a scheme to evade and mislead creditors by putting assets of

Mr. Anderson in Ms. Anderson's name.[2] ECF No. 149; AP-ECF No. 1. The complaint

includes six counts, as follows:

| Count One | Claim for unjust enrichment and imposition of constructive trust and monetary relief pursuant to 11 U.S.C. §§ 544 and 550[3] against Ms. Anderson |
| Count Two | Claim seeking avoidance of transfers of assets, money damages and constructive trust pursuant to Conn. Gen. Stat. § 52-552e(a)(1), and 11 U.S.C. §§ 554 and 550 as against both defendants |
| Count Three | Claim for fraudulent transfer regarding transfers of assets pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2) and 52-552h seeking avoidance of the transfers, injunctive relief against both defendants, |

---

[1]    Citations to the docket in Case No. 15-30458 are noted by "ECF No." Citations to the docket of Adversary Proceeding No. 17-03008, are noted by "AP-ECF No."

[2]    The court notes that counsel for the Chapter 7 Trustee is also counsel for The Cadle Company in the Main Case, and in another adversary proceeding, case number 16-3033, pending against William M. Anderson, only. The Cadle Company holds a judgment allegedly totaling approximately $4,660,000 that entered in a state court case in 1993. Proof of Claim No. 1-1. Other filed proofs of claim filed in the Main Case total less than $4,500.

[3]    Unless otherwise noted, all statutory citations refer to Title 11, United States Code, commonly known as the Bankruptcy Code.

| | money damages against Ms. Anderson and a constructive trust against the transferred assets |
|---|---|
| Count Four | Claim for constructive fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552f(a) seeking avoidance of the Transfer, injunctive relief against both defendants, money damages against Ms. Anderson and a constructive trust against "the Assets" |
| Count Five | Claim for fraudulent transfer pursuant to 11 U.S.C. §§ 548 and 550 against Ms. Anderson |
| Count Six | Claim for fraudulent transfer pursuant to 11 U.S.C. §§ 544 and 550 against Ms. Anderson |

Ms. Anderson moved to dismiss the complaint arguing it failed to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012. In the alternative, Ms. Anderson requested that the Trustee be required to provide a more definite statement of her claims, pursuant to Fed.R.Civ.P. 12 12(e) and Fed.R.Bankr.P. 7012. AP-ECF No. 7.

Mr. Anderson, proceeding *pro se*, has responded.

II.    Jurisdiction and Venue

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), and the bankruptcy court has the power to enter a final judgment in this adversary proceeding, subject to traditional rights of appeal. This adversary proceeding arises under the Main Case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

III.    Applicable Law

A.    Motions to Dismiss or For More Definite Statement

At this stage the court considers the factual allegations of the complaint as true. To survive a Rule 12(b)(6) motion, available here pursuant to Fed.R.Bankr.P. 7012, a complaint must, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*internal citations omitted); Sherman v. Town of Chester*, 752 F.3d 554, 560 (2d Cir. 2014). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* Thus, the court's task in considering a motion pursuant to Rule 12(b)(6), at the pre-answer stage, is not to weigh evidence or determine whether it is probable that a defendant is liable.

When ruling on a motion to dismiss, the court must also "accept[] as true all allegations in the complaint and draw[] all reasonable inferences in favor of the non-moving party," here, the Trustee. *Gonzales v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). While the court must accept the facts asserted in the complaint as true, the court's review of the complaint is not conducted in a vacuum; this is a "context-specific task that requires the . . . court to draw on its judicial experience and common sense" in

4

evaluating whether the allegations are plausible. *Harris v. Mills*, 572 F.3d 66, 72 (2d

Cir. 2009)(*quoting Iqbal*, 556 U.S. at 679). "[A]lthough 'a court must accept as true all of

the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal

conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (*quoting Iqbal*, 556

U.S. at 679).

Turning next to relief pursuant to Fed.R.Civ.P. 12(e) and the demand for a "more

definite statement" of the claim, when the pleading, here the complaint, "is so vague or

ambiguous that the party cannot reasonably prepare a response," the court may permit

the filing of an amended complaint rather than dismiss the complaint. Generally,

"[m]otions pursuant to Rule 12(e) are disfavored and should not be granted 'unless the

complaint, is so excessively vague and ambiguous as to be unintelligible and as to

prejudice the defendant seriously in attempting to answer it.'" *Greater N.Y. Auto.*

*Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 76 (E.D.N.Y.2002) (*quoting*

*Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y. 1986)). "The rule is designed to

remedy unintelligible pleadings, not to correct for lack of detail." *Kuklachev v. Gelfman*,

600 F.Supp.2d 437, 456 (E.D.N.Y. 2009). A motion for a more definite statement is only

warranted if the complaint does not provide a short and plain statement as required by

Fed.R.Civ.P. 8. *Holmes v. Fischer*, 764 F.Supp.2d 523, 531-32 (W.D.N.Y. 2011).

"Where a defendant cannot reasonably respond to a complaint because of the latter's

vagueness or ambiguity, a court may grant the defendant's motion for more definite

statement." *Clayton v. Middletown*, 237 F.R.D. 538, 539 (D.Conn. 2006); *Humphreys v.*

*Nager*, 962 F.Supp. 347, 352-53 (E.D.N.Y. 1997)("A 12(b)(6) motion is one made for a

failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable

legal theory, but is so unclear that the opposing party cannot respond to the

complaint."). Courts have discretion whether to grant Rule 12(e) motions. *Vaden v.*

*Lantz*, 459 F.Supp.2d 149, 151 (D.Conn. 2006).

B.      Unjust Enrichment and Imposition of a Constructive Trust

To the extent the Trustee's complaint seeks to impose a constructive trust, a

constructive trust is not an independent cause of action, but merely a remedy a court

may impose upon a defendant liable for unjust enrichment. *Cendant Corp. v. Shelton*,

474 F.Supp.2d 377, 383 (D.Conn. 2007).

Under Connecticut law, to assert a claim of unjust enrichment, the plaintiff

Trustee must plead as follows: (1) that the defendant Ms. Anderson was benefited; (2)

that Ms. Anderson unjustly did not pay the Trustee or someone one on whose behalf

the Trustee may now sue for the benefits, and (3) that the failure of payment was to the

Trustee's detriment." *Vertex, Inc. v. Waterbury*, 278 Conn. 557, 573 (Conn. 2006).[4]

C.      Requirements for a Complaint by a Trustee Seeking to Avoid Transfers
        Pursuant to 11 U.S.C. § 544 (Trustee as lien creditor and as successor to
        certain creditors and purchasers), § 548 (Fraudulent transfers and
        obligations) and § 550 (Liability of transferee of avoided transfer)

The Bankruptcy Code provides a Chapter 7 trustee with various tools to avoid

pre-bankruptcy transfers that were objectively (or constructively) fraudulent or

subjectively fraudulent in order to recover transferred assets and distribute them

amongst the unsecured creditors. One of those tools is the power pursuant to § 544, to

---

[4]   The court notes parenthetically that "[a] fraudulent transfer claim shares many features of a claim for
unjust enrichment," and courts will not award duplicative relief to plaintiff under both theories, but "'at the
pleadings stage, a plaintiff is not required to elect a single theory upon which to proceed.'" *In re Hellas
Telecomm. (Luxembourg) II SCA*, 535 B.R. 543, 585 (Bankr. S.D.N.Y. 2015) (*quoting Silverman v. H.I.L.
Assocs. Ltd. (In re Allou Distribs., Inc.),* 387 B.R. 365, 412 (Bankr. E.D.N.Y. 2008)).

avoid transfers as a lien creditor of the debtor, and as a successor to certain creditors

and purchasers such as *bona fide* purchasers of real property.

Section 544 also permits the Trustee to avoid certain transfers by a debtor under

state law, and recover the proceeds for the benefit of the debtor's estate.  11 U.S.C. §§

544(b)(1); 550.  "The standards of conduct for transfer avoidance under Connecticut law

are not materially different than those under § 548."  *In re Carrozzella & Richardson*,

302 B.R. 415, 419 (Bankr. D. Conn. 2003).  Other than the fact that Connecticut law

affords the Trustee a four-year reach back period, as opposed to a shorter period under

§ 548, the two are not "materially different."  *Carrozzella*, 302 B.R. at 419.

Conn. Gen. Stat. § 52-552e provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor, if the creditor's claim arose before the transfer was made or the
obligation was incurred and if the debtor made the transfer or incurred the
obligation: (1) With actual intent to hinder, delay or defraud any creditor of
the debtor; or (2) without receiving a reasonably equivalent value in
exchange for the transfer or obligation, and the debtor (A) was engaged or
was about to engage in a business or a transaction for which the
remaining assets of the debtor were unreasonably small in relation to the
business or transaction, or (B) intended to incur, or believed or reasonably
should have believed that he would incur, debts beyond his ability to pay
as they became due.

Additionally, the Trustee asserted certain transfers by the debtor were

constructively fraudulent, and sought relief only under Connecticut law.  Conn Gen. Stat

§ 52-552f provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor whose claim arose before the transfer was made or the obligation
was incurred if the debtor made the transfer or incurred the obligation
without receiving a reasonably equivalent value in exchange for the
transfer or obligation and the debtor was insolvent at that time or the
debtor became insolvent as a result of the transfer or obligation.

7

The Trustee's complaint seeks relief under Connecticut law and the Bankruptcy Code, however it alleges fraudulent transfers of real property in located in Connecticut and Florida.  Ms. Anderson's motion to dismiss does not take a position on whether Florida or Connecticut law applies to the transfers of real or personal property in Florida. Because this decision does not turn on the application of either Florida or Connecticut law, the court expresses no opinion on the choice of law.  Parenthetically, the court notes that Florida fraudulent transfer law appears to share the same differences between it and the Bankruptcy Code as does Connecticut law and the Bankruptcy Code.  *In re Pearlman*, 515 B.R. 887, 894 (Bankr. M.D. Fla. 2015) ("The Trustee's state law fraudulent transfer claims, asserted through § 544(b) of the Bankruptcy Code, are analogous in form and substance to their bankruptcy counterparts and may be analyzed contemporaneously.  The only material difference between the state and bankruptcy provisions is the favorable four-year look-back period under the Florida law. . . .  The Court analyzes the Trustee's claims under § 548 of the Bankruptcy Code and § 726 of the Florida Statutes together.")(internal citations omitted).

Another tool the Trustee can employ is § 548, that allows a trustee to avoid fraudulent transfers that occurred during the two year period before the Petition Date.  A transfer under §§ 544 and 548 may be either intentionally or constructively fraudulent. But, the court "must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of either an intentional or constructive fraudulent conveyance." *In re Geltzer*, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013).

In addition to different elements, intentional fraudulent transfers and constructive fraudulent transfers are subject to different pleading standards.  In order to survive a motion to dismiss a claim for an intentionally fraudulent transfer, a plaintiff must satisfy the pleading requirements of Fed.R.Civ.P. 9(b), while a claim for a constructively fraudulent transfer "is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, rather than fraud, [and] the pleading with particularity requirement for Rule 9(b) does not apply." *In re Derivium Capital, LLC*, 380 B.R. 429, 439 (Bankr. D.S.C. 2006).  Claims of constructively fraudulent transfers, need only satisfy Fed.R.Civ.P. 8(a)'s mandate to plead a "short and plain statement of the claim showing that [the trustee] is entitled to relief." *In re Bernard L. Madoff Inv. Securities LLC*, 458 B.R. 87, 110-11 (Bankr. S.D.N.Y. 2011).

(1)     Intentionally Fraudulent Transfers

Because the Trustee's complaint alleges the various transfers by the Debtor were intentionally fraudulent, the complaint must be tested against the higher pleading standards for allegations of fraud, and must meet two additional burdens. Fed.R.Bankr.P. 7009; Fed.R.Civ.P. 9(b).  The first additional burden goes to the pleading of the circumstances of the fraud, while the second burden goes to the pleading of the defendant's mental state.  "Under Rule 9(b), 'though mental states may be pleaded generally, Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent.'" *In re Lyondell Chem. Co.*, 554 B.R. 635, 652 (S.D.N.Y. 2016) (*quoting, Lorely Fin. (Jersey) No. 3 Ltd. V. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015)).   To survive a motion to dismiss, a complaint must plead sufficient facts such that a reasonable person could draw an "inference of scienter." *Lyondell*,

9

554 B.R. at 652 (*quoting Employees Retirement Sys. of Gov. of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d. Cir. 2015)).

Because pleading actual fraudulent intent may be difficult, a plaintiff, "may rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F.Supp.2d 292, 335 (S.D.N.Y. 2009) (*quoting In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d. Cir. 2005)). "Badges of fraud" include, but are not limited to "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry." 5 Collier on Bankruptcy, ¶ 548.04 (16th Ed. 2018). While generally the presence of a single badge of fraud is insufficient to establish actual fraudulent intent, 'the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose.'" *In re Park South Securities, LLC*, 326 B.R. 505, 518 (Bankr. S.D.N.Y. 2005) (*quoting Max Sugarman Funeral Home, Inc. v. A.D.B. Inv'rs*, 926 F.2d 1248, 1254-55 (1st Cir. 1991)). In short, the Trustee must "plead facts showing that the transfer was made by the defendant with the intent to hinder, delay or defraud present or future creditors of the

transferor." *Official Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006).

(2)   Constructively Fraudulent Transfers

To the extent the Trustee's complaint alleged certain transfers were merely "constructively fraudulent," those claims are subject to the standards of Fed.R.Civ.P. 8, incorporated here through Fed.R.Bankr.P. 7008, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Verestar*, 343 B.R. at 459-60 (Holding heightened pleading requirements do not apply "because they are based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, not on fraud.").

(3)   Specificity Regarding Transfers to be Avoided

With respect to transfers that are alleged to be intentionally fraudulent, the heightened pleading requirements of Fed.R.Civ.P. 9(b) require more as to the alleged fraudulent intent of the transferor; a higher degree of specificity regarding the transfers to be avoided is also required.  "To satisfy Rule 9(b)'s particularity requirement, a party must ordinarily allege: '(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto.'" *Madoff*, 458 B.R. at 106 (*quoting Pereira v. Grecogas Ltd., (In re Saba Enters. Inc.)*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009).

In contrast, claims of merely constructively fraudulent transfers must satisfy Fed.R.Civ.P. 8(a)'s mandate to plead a "short and plain statement of the claim showing that [the trustee] is entitled to relief." *Madoff*, 458 B.R. at 110-11.  Though less stringent than the requisite specificity required of intentionally fraudulent transfers, under the

11

Fed.R.Civ.P. 8(a) standard, a plaintiff who seeks to avoid a constructively fraudulent

transfer must still identify the transfers of property she seeks to avoid.  While, "courts

have found that allegations aggregating transfers into lump sums over several years

without identifying the number of transfers, the dates of the transfers, or the amount of

any specific transfer will satisfy Rule 8(a) pleading requirements," Rule 8(a)'s notice

pleading requirements do require some form of specificity as to the transfers sought to

be avoided and whether the Trustee seeks to avoid a given transfer as a constructive

fraudulent transfer, so that Ms. Anderson may have "fair notice of what the [Trustee's]

complaint is and the facts upon which it rests."  *Madoff*, 458 B.R. at 113 (*quoting Anwar*

*v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 422 (S.D.N.Y. 2010)); *see also Erickson*

*v. Pardus*, 551 U.S. 89, 93 (2007) (noting under Rule 8(a) a compliant need only "'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

(*quoting Twombly*, 550 U.S. at 555)).

Allegations of specific transactions or withdrawals – from title in one name to title

in another, or from identified accounts – are necessary to provide a defendant with

sufficient information so she may prepare for litigation on the merits. *Compare*, *Madoff*,

458 B.R. at 113-114 (permitting allegations such as "withdrawals by [Defendants] of at

least $7.3 million from [investment] Accounts after April 2004, and transfers between

2002 and 2008 to pay for personal expenses charged to the Defendants' credit cards."),

*with Madoff*, 458 B.R. at 114, n. 17, 19 (dismissing attempts to recover "salaries and

bonuses between 2001 and 2008,"  and undated "payments from [Bernard L. Madoff

Investment Securities] to finance [defendants'] ownership stakes in" other entities).  As

the *Madoff* opinion demonstrates, a complaint alleging a constructively fraudulent

12

transfer need not allege every single detail of a transfer sought to be recovered, but it must provide some factual guideposts to give a transferee-defendant "fair notice" of the claim itself.

      D.    Conspiracy or Scheme to Commit Fraud

Although not pled specifically by the Trustee, a comprehensive reading of the complaint suggests that the Trustee alleges that Mr. Anderson and Ms. Anderson engaged in a conspiracy to commit fraudulent transfers, and seeks relief. *See*, AP-ECF No. 1, ¶ 12 ("The Debtor would frequently try to evade and mislead creditors by claiming property and/or businesses were owned by Mary Ann, when, in fact, Mary Ann only nominally owned property and/or businesses, while the Debtor retained all actual and equitable ownership interests in said property and/or businesses (the "Scheme")").

However, a Chapter 7 Trustee cannot bring a claim for a conspiracy to commit a fraudulent transfer. *In re Madeoy*, 576 B.R. 484, 496-97 (Bankr. D.Md. 2017) (collecting cases). "A trustee's recourse for a fraudulent transfer is limited to remedies provided in 11 U.S.C. § 550, 'and that provision only allows the trustee to recover up to the amount of the transfer from a transferee, or a party for whose benefit the transfer was made.'" *Madeoy*, 576 B.R. at 497 (*quoting Official Comm. of Unsecured Creditors of Fedders N. Am. Inc., v. Goldman Sachs Credit Partners*, *L.P., (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 548 (Bankr. D.Del. 2009)).

      III.    Discussion

For purposes of this Memorandum of Decision, the court assumes as true the facts alleged in the Trustee's complaint but does not give the same deference to the

plaintiff's conclusory statements involving the application of law to fact.  *Harris*, 572 F.3d at 71.

As to the allegations of fact, the court begins by noting that the complaint employed the following defined terms: Assets, Transfers, the Home, the Company, the Commercial Property, the Florida Property and the Personal Property.  The complaint's definition of the terms "Assets" (at paragraph 45) and "Transfers" (at paragraph 75) is presented as follows:

> 45.    The Company, the Commercial Property, the Home, the Florida Property, and the Personal Property, including (without limitation) the proceeds of all such assets and property, (collectively, the "Assets") …

> 75.    The Trustee claim … arose before the Assets were transferred (the "Transfer").

In essence, the complaint alleged that Mr. Anderson and the movant here, Ms. Anderson, engaged in a lengthy scheme or conspiracy -- continuing to the present day – to secrete the Assets and proceeds of the Assets from the Debtor's creditors. According to paragraph 61 of the complaint, the "Scheme consisted of and relied upon fraud, misrepresentations, imposition, circumvention, artifice, or concealment or abuse of confidential relations."  AP-ECF No. 1, ¶ 61.  However, to the extent the allegation is that there was a conspiracy or scheme to commit a fraudulent transfer, this is not a claim the Trustee may bring pursuant to § 550.  *Madeoy*, 576 B.R. at 496 ("a plaintiff may not recover damages for a conspiracy to commit a fraudulent transfer.").  While the Trustee may seek to recover property fraudulently transferred by the Debtor out of the reach of creditors, she is not entitled to damages for the Debtor's scheme or conspiracy to effectuate those transfers.  *See, Indus. Enters. of Am., Inc. v. Massuto (In re Pitt.*

14

*Penn Holding Co.)*, 484 B.R. 25, 48 (Bankr. D.Del. 2012) ("Bankruptcy courts do not recognize claims for damages for conspiracy to commit a fraudulent transfer.").

With respect to the complaint's underlying premise – that the Debtor fraudulently transferred the Assets to Ms. Anderson – there is little or no information about the transfers.  There is no time frame (not even narrowed down to a year) for alleged transfers and there is no identification of the transferor for any alleged transfer.

The dates of the transfers the Trustee seeks to avoid must be pled, albeit generally, for two reasons.  First, including general dates provides the defendant with fair notice of the claim so she may prepare a coherent response to the complaint. Second, more specifically, the Trustee's avoidance powers are time-limited under both Connecticut law and the Bankruptcy Code.  *See generally, Carrozzella*, 302 B.R. at 419 (comparing Connecticut fraudulent transfer law's time limits with those under the Bankruptcy Code).  Although the Trustee's complaint asserts such limitations have been tolled, the court need not defer to that legal conclusion.  *Harris*, 572 F.3d at 71.  Without general dates, neither the defendant nor the court can determine whether the Trustee has the power to avoid certain transfers.  *Madoff*, 458 B.R. at 115 ("To the extent that the Court is unable to determine whether a transfer falls under the look-back period of any applicable law" it does not satisfy Rule 8(a)).  The court expresses no opinion at this juncture on the merits of the Trustee's tolling argument.

A complaint that generally alleges a transfer was with nefarious intent must identify some basic information including the date, the consideration or lack thereof, the origin and destination of the transfer.  When a complaint fails to provide this information, as here, the defendant does not have "fair notice of what the . . . claim is, and the

grounds upon which it rests." *Erickson*, 551 U.S. at 93.  The Trustee's complaint must identify, at a bare minimum, the specific transfers she seeks to avoid and recover for the benefit of the estate.  The sparse definition of "Transfers" in the complaint – devoid of dates other than a reference to decades past -- is insufficient to provide the defendant with "fair notice" of the factual basis for the Trustee's claim.[5]

A.  The Home

With the exception of identifying the address and location of the Home, there are few other facts alleged in the complaint regarding the Home.  The only allegation regarding a time frame for a specific asset transfer relates to the Home, a residential property defined in paragraphs 31 through 33 as having been purchased by the defendants "decades ago".  AP-ECF No. 1, ¶ 31-33.  But the time frame for the alleged avoidable or fraudulent transfer from the Debtor to Ms. Anderson is described as: "[s]hortly before or during the police investigation that resulted in the Debtor's imprisonment," which is less than clear.  AP-ECF No. 1, ¶ 33.  Since the alleged transfer is of real property, the date of the transfer would be a matter of public record and could

---

[5]     The court notes that the plaintiff relies in part on state common law, describing the complaint as seeking to establish a claim one for, "diversion of the fruits of the debtor's labor."  AP-ECF No. 9, p.4.  Reviewing the cases cited by plaintiff including *Cadle v. Zubretsky*, 2008 Conn. Super. LEXIS 244 (Conn. Sup. Ct. Jan. 30, 2008) among other state court cases, the court notes that the plaintiff seems to be arguing that she should be permitted to allege a reverse veil piercing argument regarding the Corporation and perhaps other assets in order to satisfy her burden.  However, the complaint is premised on the Trustee's standing to bring recovery claims pursuant to 11 U.S.C. §§ 554 or 558, and that requires greater identification of the transfer or transfers being avoided than what is presented in the complaint.  With regard to a bankruptcy case relied on by the Trustee, *Cadle Co. v. Ogalin*, 303 B.R. 552 (Bankr.D.Conn. 2004), that was a determination pursuant to 11 U.S.C. § 727, not 11 U.S.C. §§ 554 or 558.   The Cadle Company has objected to the bankruptcy discharge of the debtor, William Anderson, and that adversary proceeding (number 16-3033) is stayed presently.  The court also notes there is a lack of unanimity regarding the underpinnings of both the *Zubretsky* case and the *Ogalin* case that was not identified by the plaintiff.  *See, Coan v. Geddes*, 2013 WL 870242 (Conn. Super. Jan. 30, 2013)(Dooley, J.)(rejecting certain conclusions in *Cadle Co. v. Ogalin*, 495 F.Sup.2d. 278 (D.Conn.2007)).  *See also,* Note 8, below.

easily be included in the complaint instead of the vague reference to a police

investigation that apparently occurred in the 1990s.

There is no representation that the transfer of the Debtor's one-half interest in the

Home was without consideration.  While paragraph 76 of Count Two alleges, generally,

that "the Transfer" (referring to everything owned by Ms. Anderson, including the Home)

was made without receipt of reasonably equivalent value, the particulars of the specific

transfers of property – including transfers of real property, equity in a commercial

business, and all personal property owned by Ms. Anderson -- are not identified,

rendering the allegation overly vague.  Moreover, given the complaint's allegation that

there was a divorce (and the court's understanding that it is not unusual to have a

transfer of all or part of the marital home pursuant to a divorce decree, presumably also

a matter of public record), the information about the transfer of the Home is too vague.

The complaint simply fails to provide fair notice of the basis for the fraudulent transfer

claim regarding the Home.  AP-ECF No. 1, ¶ 76.

B.  The Company

To the extent the complaint alleges the equity of the Company was the subject of

a fraudulent transfer, the allegations beg the question of how Ms. Anderson obtained

the equity: was it transferred to her?  If so, when, and by whom?  To sustain fraudulent

transfer claims regarding the portion of the "Assets" that is the Company, the plaintiff

needs to be more specific regarding what was transferred by the Debtor to Ms.

Anderson, and when the alleged transfer took place.  This concern about the vague

nature of the fraudulent transfer allegations is highlighted by review of the allegation in

paragraph 15 of the complaint that seems to say that the equity in the Company was

17

originally in the name of Ms. Anderson, thus undermining the Trustee's general allegation that there was a fraudulent transfer.[6]

To the extent the Trustee alleges that Ms. Anderson "did not have any experience restoring classic and/or vintage cars," and "spends no time at the Company," the Trustee's complaint fails to elucidate how those facts have any bearing on whether she committed or benefitted from fraudulent or constructively fraudulent transfers.  AP-ECF No. 1, ¶ 14-18.  Assuming Ms. Anderson does own "Classic Car Restoration, LLC," the Trustee's complaint does not allege how Ms. Anderson's role as an owner, albeit one with no experience in car restoration, has any bearing on whether or not Ms. Anderson has committed any fraudulent or constructively fraudulent transfers.  The logical chain of allegations contained in the complaint proceed as follows; that Ms. Anderson owns the Company, which performs work she is inexperienced in, but that Mr. Anderson is experienced in, and therefore, the Company is owned by Mr. Anderson.[7]  AP-ECF No. 1, ¶ 14-19.  These conclusory allegations are precisely the sort that the Court is not required to accept.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (noting that in the context of an antitrust claim "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point" is insufficient to survive a motion to dismiss).

---

[6]  Paragraph 15 states, ". . . [Ms. Anderson] did not have any experience restoring classic and/or vintage cars prior to opening the Company."

[7]  The Trustee's complaint asserts Ms. Anderson "owns" "Classic Car Restoration, LLC."  AP-ECF No. 1, ¶ 14.  Although the Trustee's complaint is devoid of specifics on this point, the court assumes, for the moment, that "Classic Car Restoration, LLC" is a Connecticut Limited Liability Company, of which Ms. Anderson is a member.

### C.  The Commercial Property

With regard to the portion of the Assets that are defined as the Commercial

Property, Ms. Anderson is the owner of real property in Waterbury, Connecticut

purchased "with income and proceeds derived from [Mr. Anderson] and/or the [the

Company]," and the maintenance of the real property is paid for by proceeds from the

Company.  AP-ECF No. 1, ¶ 28, 29.   While the Commercial Property is identified with a

street address, the date of the purchase and the date of transfer to Ms. Anderson is not

stated.  Like the Company, it may be that Ms. Anderson purchased the Commercial

Property originally, or that the Debtor transferred title to Ms. Anderson on a particular

date.  The complaint fails to fill in these details that presumably are easily obtained from

the local land records.  To the extent the complaint alleges that Ms. Anderson is liable to

the Trustee because of a fraudulent transfer of the Commercial Property, these simple

details need to be included.

### D.  The Florida Property

With regard to the Florida Property, the complaint also fails to identify a transfer

sought to be avoided with sufficient precision.  The allegations are that Ms. Anderson

owns the Florida Property that was purchased with income and proceeds from the

Company.  AP-ECF No. 1, ¶ 40.  "When [Mr. Anderson] moved to Florida for a while, he

resided at the Florida Property and used that property as his mailing address for his

Florida Driver's License."  AP-ECF No. 1, ¶ 42.  But the complaint fails to articulate what

transfer the Trustee seeks to avoid; perhaps a transfer of income and proceeds of the

Company, or a transfer of the Florida Property to Ms. Anderson.  The complaint is

simply unclear.

E.  The Personal Property

Finally, Ms. Anderson owns "personal property in Connecticut and Florida and possibly elsewhere" (the "Personal Property").  AP-ECF No. 1, ¶ 43, 44.  The Personal Property was purchased with "income and proceeds derived from the Company and/or the debt service and maintenance for the Personal Property was (and continues to be) paid for through income and proceeds from the Company."  AP-ECF No. 1, ¶ 43, 44.  These allegations are simply too vague.  The Trustee's complaint does not identify a single specific transfer from Mr. Anderson to Ms. Anderson to which Ms. Anderson could formulate a coherent or specific defense in response.

While the Bankruptcy Code provides the Trustee with generous avoidance powers under §§ 544 and 548, it is clear that specific transfers must be identified and the transferee must have the opportunity to establish that an exception to the avoidance exists.  The Trustee must therefore identify the transfers she seeks to avoid with sufficient specificity so that the defendant-transferee can fairly formulate and assert specific defenses to the Trustee's complaint.  *Madoff*, 458 B.R. at 110-11.  The complaint's aggregation of all Personal Property, is insufficient, and fails to give Ms. Anderson "fair notice of what the [Trustee's] complaint is and the facts upon which it rests."  *Madoff*, 458 B.R. at 113; *see also Erickson*, 551 U.S. at 93.  With the exception of merely identifying the Home, Commercial Property, and Florida Property, the complaint here fails to satisfy the threshold requirements of pleading "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto."  *Madoff*, 458 B.R. at 106 (citations omitted).  Identification of the assets the Trustee seeks to recover is required not just to provide

20

Ms. Anderson fair notice, but also, because the Trustee's ability to recover has long

been limited to the value of the property transferred.[8]  The Trustee must identify which

property she seeks to recover, she cannot simply lay claim, absent more, to *everything*

within Ms. Anderson's dominion.

      F.      Fed.R.Civ.P. 12(b)(6) vs. Fed.R.Civ.P. 12(e)

      The court has considered all of the allegations in the complaint with respect to

each count and this Memorandum of Decision applies to the allegations set forth in

each count of the complaint.  With respect to Count One, as noted earlier, a

constructive trust is not an independent cause of action, but merely a remedy a court

may impose upon a defendant liable for unjust enrichment.  *Cendant Corp.* 474

F.Supp.2d at 383.  The unjust enrichment that forms the predicate for the remedy

sought in Count One is alleged with insufficient specificity.  With respect to Counts Two

through Six, the allegations are insufficient as presently stated to provide sufficiently

clear notice to the defendant of the specific claims the Trustee is asserting pursuant to

11 U.S.C. §§ 544, 548 or 550, or, Conn.Gen.Stat. §§ 52-552e(a)(1), 52-552e(a)(2), or

52-552f(a).

      The court concludes for these reasons that the complaint as presently formulated

fails to satisfy Fed.R.Civ.P. 8(a),[9] fails to meet the heightened pleading requirements for

---

[8]   It has long been established under Connecticut law that "[c]ommon law principles do not authorize a general creditor to pursue the transferee in a fraudulent conveyance action for anything other than the specific property transferred or the proceeds thereof." *Derderian v. Derderian*, 3 Conn. App. 522, 529 (Conn. App. Ct. 1985) (*citing Austin v. Barrows*, 41 Conn. 287, 299 (1874); *Smith v. Blake*, 1 Day 258, 262 (1804)).

[9]   To be clear, the court is mindful that aggregations of transfers may satisfy Rule 8(a)'s heightened pleading standards.  *Madoff*, 458 B.R. at 113 ("Indeed, courts have found that allegations aggregating transfers into lump sums over several years without identifying the number of transfers, the dates of the transfers, or the amount of any specific transfer will satisfy Rule 8(a) pleading requirements.").  But a complaint that seeks to aggregate every transfer of property in the last twenty years, as the Trustee's does, stretches the concept of aggregation too far.

fraud under Fed.R.Civ.P. 9(c), and fails to state a claim for which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6).  However, the court will exercise its discretion to grant Ms. Anderson's motion for a more definite statement under 12(e).  *Vaden*, 459 F.Supp.2d at 151 ("Where a defendant cannot reasonably respond to a complaint because of the latter's vagueness or ambiguity, a court may grant the defendant's motion for more definite statement under Fed.R.Civ.P. 12(e).").

The court has considered all other arguments made by plaintiff and, to the extent not already addressed, find them to be without merit.

IV. Conclusion

For the reasons stated, Ms. Anderson's motion for a more definite statement under Rule 12(e) is GRANTED and the Trustee may file an amended complaint on or before July 25, 2018.

In the absence of the filing of an amended complaint, the court will dismiss this adversary proceeding pursuant to Fed.R.Civ.P. 12(b)(6).

Dated this 26th day of June, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
*United States Bankruptcy Judge*
*District of Connecticut*