**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

|  |  |  |
|---|---|---|
| In Re: | ) | CHAPTER 7 |
|  | ) |  |
| WILLIAM M. ANDERSON, | ) | CASE NO. 15-30458 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| BARBARA H. KATZ, CHAPTER 7 TRUSTEE, | ) | ADV. PROC. NO. 17-03008 |
| Trustee | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| WILLIAM M. ANDERSON AND MARY ANN ANDERSON, | ) |  |
| Defendants | ) |  |
|  | ) | JANUARY 25, 2019 |

**OBJECTION TO MOTION TO DISMISS**

BARBARA H. KATZ, solely as trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of WILLIAM M. ANDERSON, objects to the Motion to Dismiss, dated September 27, 2018, (the "Motion") filed by Defendant MARY ANN ANDERSON (the "**Defendant**").

The Motion continues to claim a lack of specificity concerning the transfers. Ironically, the lack of specificity is due to the breadth and success of the decades long fraud the Defendant and the Debtor conducted, as well as their refusal to provide information. As the Madoff court noted, based upon the limited information, the trustee is entitled to latitude concerning her pleading burden. The Trustee has satisfied her pleading obligations and the Motion must be denied. Alternatively, the Court should delay adjudication of the Motion until discovery in related proceedings are compete.

1

**I.       STANDARD OF REVIEW FOR A MOTION TO DISMISS.**

"Rule 12(b)(6) imposes a substantial burden of proof upon the [Defendant]." ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1317 (S.D.N.Y. 1997). The Trustee only needs to satisfy the "liberal notice pleading requirements" under Fed. R. Civ. P. 8(a)(2). See Stephen Douglas, Ltd. v. Binet (In re Harvard Knitwear), 153 B.R. 617, 623 (Bankr. E.D.N.Y. 1993). This Court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. N.Y. 1984). Motions to dismiss that would "…summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

"[I]n reviewing a motion to dismiss on the pleadings, 'the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff.'" Walker v. New York, 974 F.2d 293, 298 (2d Cir. N.Y. 1992). Ultimately, "[a] court may not dismiss a complaint unless 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

**II.      THE DEFENDANT CANNOT DISMISS CLAIMS AS TO THE HOME.**

First, laches is not properly raised and/or disposed of on a motion to dismiss. Generally speaking, "…a question of fact is not suitable for resolution on a motion to dismiss." Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014); see also Pujals v. Standard Chartered Bank, 533 F. App'x 7, 10 (2d Cir. 2013) ("The meaning of an ambiguous contract, however, is a

question of fact, which cannot be resolved by the court on a motion to dismiss."). A defense of laches is fact intensive. As the Second Circuit concluded:

> The equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case. The inquiry is a factual one. The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court

Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994) (internal citation omitted). Accordingly, it is improper to seek dismissal on the basis of laches.

Indeed, in this case, factual issues abound concerning the laches defense. For example, the Defendant claims (through her attorney) that she changed her position. (See Motion, p. 2.) Whether the Defendant did or did not change her position is a question of fact. Further, the legitimacy of the "divorce" and whether the Defendant and Mr. Anderson are, in fact, still married is a question of fact. The Trustee alleged that the "divorce" was a sham because the Defendant and Mr. Anderson maintained a marriage-like relationship and have held themselves out as married for decades. (See First Amended Complaint, ¶ 11.) In fact, the Trustee alleges that the Defendant and Mr. Anderson are married, despite their claim to the contrary. (See id., ¶ 185.) The Defendant obviously disputes those allegations. However, those allegations – and all the reasonable implications from those allegations – must be accepted as true. See Walker v, 974 F.2d, at 298. Thus, there are factual issues that cannot be resolved on a motion to dismiss.

Second, on a related note, the Defendant cannot prevail on a claim of laches because she cannot demonstrate – under the Rule 12(b) standard – that she is coming to Court with clean hands. "[A] party asserting an equitable defense such as laches must demonstrate that it comes before the court with clean hands." Eppendorf-Netheler-Hinz GMBH v. Nat'l Scientific Supply Co., 14 Fed. Appx. 102, 105 (2d Cir. 2001). The Amended Complaint is replete with direct allegations of wrong-doing by the Defendant. (See Amended Complaint, ¶¶ 11-12 (Sham

3

divorce); ¶ 13 (Defendant evaded and mislead creditors); ¶¶ 183-186 (Defendant engaged in wrongful conduct in support of the Scheme). Those allegations must be accepted as true. See Walker v, 974 F.2d, at 298. Thus, for purposes of a motion to dismiss, the Defendant does not come to this Court with clean hands and cannot – as a matter of law – invoke laches at this stage. There is a question of fact that precludes use of laches on a motion to dismiss.

Third, it is not proper to dismiss a single form of damages. The Complaint addresses "Assets" which is defined to include, inter alia, the Home. (See Amended Complaint, ¶ 165.) It is not proper for the Court to dismiss one element of damage and certainly not at this stage.

## III. THE TURNOVER COUNT IS PROPER BECAUSE THE TRUSTEE IS ENTITLED TO PLEAD ALTERNATIVE THEORIES.

To be sure, as the Defendant points out, in the first six counts, the Trustee alleges that the Defendant owns the Assets. As a result, for purposes of Counts 1 through 6, the Assets are not property of the Estate. However, The Trustee is entitled to plead alternative theories. See Fed. R. Civ. P. 8(d). Thus, in Count Seven, the Trustee specifically plead that the Defendant is in possession of the Assets which are, in whole or in part, property of the Estate. (See Count Seven, ¶ 16, 226.) Equally, as an alternative, the Trustee plead that the Assets are being held for the Debtor. (See id., ¶¶ 230; see also ¶ 16 (Classic Car Company), 59 (Haunted House Business), 96 (Transfer-Related Value), and 138 (Home).) Thus, the Complaint alleged that the Defendant is in possession of property of the estate. Again, for purposes of deciding the Motion, those allegations – and all reasonable inferences arising from those allegations – must be accepted as true. See Walker v, 974 F.2d, at 298. Accordingly, the Defendant in possession of property of the Estate and a turnover claim under § 542 is proper.

**IV.    THE FIRST AMENDED COMPLAINT SATISFIES THE PLEADINGS REQUIREMENTS TO SURVIVE A MOTION TO DISMISS, GIVEN THE CIRCUMSTANCES OF THIS CASE.**

In connection with the last motion to dismiss, the Court outlined its position concerning the different pleading standards under Fed. R. Civ. P. 8 and 9, as those rules apply to the Trustee's claims for constructive fraud (Rule 8) and actual fraud (Rule 9). (See ECF No. 32, pp. 9-13.) The Court relied heavily upon In re Bernard L. Madoff Inv. Securities, LLC, 458 B.R. 87 (Bankr. S.D.N.Y. 2011) for the general pleading rules and its analysis of the Trustee's initial complaint. (See id., pp. 9, 11-12; 15.) The Defendant – seizing upon the Court's prior ruling – continues to claim the Trustee has not met her burden. However, a detailed review of Madoff and the allegations of the First Amended Complaint demonstrate that the Trustee has satisfied the requirements to survive a motion to dismiss, given the circumstances – most notably, the Trustee's lack of access to the debtor's books and records and the Defendant's refusal to comply with discovery.

    A.    *Madoff* Acknowledges a Less Stringent Pleading Obligation – Even Under Rule 9 – When a Trustee Does Not Have Access To Records.

In Madoff, the Trustee of a Securities Investor Protection Act liquidation (the "Trustee") established in connection with Bernie Madoff's Ponzi scheme brought suit against Madoff's family members (the "Family Members") alleging, essentially, that the Family Members participated in and benefitted from the Ponzi scheme. See Madoff, 458 B.R., at 100-103. In total, the Trustee claimed there were more than 383 transfers that totaled over $141,000,000. See id., at 103. Without parsing all 383 transfers here, the Madoff court concluded that the Trustee had satisfied his pleading obligations as to some transfers by providing specific enough information and concluded that the Trustee had failed to satisfy his burden as to other transfers because he did not include enough specific information. See id., 113-115.

Critically, however, the Court in <u>Madoff</u> made it very clear in its conclusion that the Trustee had not satisfied its burden as to some transfers was based – at least in part – upon the Court's knowledge that the Trustee had sufficient records to make the allegations more detailed. Moreover, the Court made it perfectly clear that sometimes a trustee will have to conduct discovery to make such specific allegations if it does not have the records and/or if the defendant had refused to provide such records. That is precisely the case here.

In Madoff, it was clear that the trustee had access to detailed and extensive documents concerning the alleged nefarious activity concerning the Family Members and the Court was, in essence, demanding the Trustee review the records *in his possession* to augment the allegations. As the Court concluded:

> Rectifying the majority of these pleading deficiencies upon amendment should not prove to be a Herculean task. For example, more detailed information appears to be readily accessible to the Trustee given that the Complaint already includes information related to the credit cards used by the Defendants as well as examples of personal charges paid by BLMIS. Similarly, since the Trustee has indicated that *four* payments were made for the purchase and restoration of the Aston Martin, he likely can specify the method, amount, and date of each of those payments without much difficulty.

<u>Id.</u>, at 107 (internal citation omitted). The <u>Madoff</u> Court was clearly of the mind that the Trustee could provide more detailed allegations because the records – which had the additional detail – were readily available to him. Moreover, there would be no harm to the Trustee to require such information because the Trustee could obviously provide such on amendment.

Nonetheless, understanding that not every trustee has the benefit of having documents from the perpetrators, the <u>Madoff</u> court went even further. It clearly stated that discovery is sometimes necessary to clarify the circumstances concerning specific transfers "…for instance when the trustee had no access to the debtor's books and records or the books and records are in shambles…" <u>Madoff</u>, 458 B.R., at 115. The Trustee in <u>Madoff</u> had apparently not claimed that he was

hamstrung by a lack of documentation which clearly shaded the Court's conclusion that dismissal for a lack of specificity would not harm the Trustee. See id. In this case, however, the Trustee not only claimed a lack of documents, but affirmatively alleged it in the First Amended Complaint.

As a final matter, the Madoff court acknowledged that there is an eased burden under Rule 9 (and thus also under its lesser-exacting cousin, Rule 8) for a bankruptcy trustee who always comes to the game late and is a stranger to the transactions. As the Madoff court explained:

> To satisfy Rule 9(b)'s particularity requirement, a party must ordinarily allege: (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto. Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, however, courts in this district take a more liberal view ... since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. As the Second Circuit recently noted, [f]raud is endlessly resourceful and the unraveling of weaved-up sins may sometimes require the grant of a measure of latitude to a SIPA trustee.

Madoff, 458 B.R., at 106 (internal citations and quotation marks omitted). Pleading fraud from second-hand knowledge means less specificity will exist because the primary evidence – a debtor's books and records and/or admissions – are not available at the time of pleading.

### B. The Trustee Does Not have Access to the Debtor's Books and Records and the Defendant has Refused to Provide Any Information.

In the First Amended Complaint, the Trustee makes it clear that the Defendant (and the Debtor) have refused to provide information. For example, the Trustee alleges that the Debtor has not provided any meaningful disclosures concerning his assets and transfers because he *claims* he does not have any records. (See First Amended Compl., ¶ 170; see also Main Case (Case No. 15-30458), ECF No. 84 (motion to compel as to Debtor); ECF 86 (Debtor reporting lack of records).) Indeed, one creditor is objecting to the Debtor's discharge based upon the lack of documentation and/or explanation for disposition of assets. (See Cadle Co. v. Anderson (In re Anderson), Adv. Proc. No. 16-0300, ECF No. 1 (Count One - § 727(a)(3); Count Two - § 727(a)(5)).)

7

In addition, the Defendant herself filed a motion for protective order in the non-discharge case seeking to prohibit discovery concerning, *inter alia*, her tax returns, tax returns for one of the companies that is the subject of the First Amended Complaint (Classic Car), and tax returns of the Debtor. (See Cadle Co. v. Anderson (In re Anderson), Adv. Proc. No. 16-0300 (non-discharge action), ECF No. 38.) Finally, the Defendant herself has also avoided a deposition in the Debtor's main case seeking, *inter alia*, documents and records concerning transfers and other issues related to the Debtor. (See First Amended Compl., ¶ 169; see also Main Case (Case No. 15-30458), ECF No. 82 (seeking to enforce subpoena against Defendant).) The Marshal return demonstrates that the Defendant was avoiding service. (See id., ECF No. 82, ¶¶ 13-18, and Exhibit B thereto.) The Trustee also included allegations concerning: (a) her lack of documents and information; (b) the Debtor's lack of records; (c) the refusal by the Defendant and the Debtor to provide information; and (d) the fact that detailed information is in the possession of the Debtor and Defendant. (See First Amended Complaint, ¶¶ 24-27, 49-53, 81-84, 103-106, 124-128, 153, 161.) Had any of those discovery efforts been completed, more detail would have been available.[1]

Thus, standing in stark contrast to the trustee in Madoff, the Trustee here has made it clear – through affirmative allegations – that she has limited access to direct information and documents. Thus, as an outsider to myriad transactions, she is forced to piece together the details of the transfers as best she can from second-hand knowledge and from the implication of the facts she has been able to unearth. The limitations imposed upon the Trustee by the Debtor's lack of documents and information, as well as the Defendant's refusal to provide documents and testimony, requires a lower level of scrutiny for dismissal and "a measure of latitude." Madoff, 458 B.R., at 106.

---

[1] Notably, the discovery directed to the Defendant in the main case was attempted well before the Trustee's complaint was filed. (Compare ECF No. 1 Complaint filed 03/10/17) with Main Case, Case No. 15-30458, ECF No. 82 (filed 04/11/16).)

8

      C.      <u>The First Amended Complaint Satisfied the Pleading Rules.</u>

The Defendant is correct that the Trustee has defined "Transfers" as limited to "Business-Transfers" and "Company-Related Transfers." (<u>See</u> First Amended Complaint, ¶ 90.) Taking each of those terms in turn, "Business-Transfers" is defined to be transfer of the Classic Car Company and/or the Haunted House Business (the "Companies"). (<u>See id.</u>, ¶ 69.) "Company-Related Transfers" is defined to be personal services the Debtor has provided to or for the benefit of the Companies, but for which the Debtor was not properly compensated. (<u>See id.</u>, ¶ 70.)

First, the Defendant claims that the Trustee has not satisfied her pleading obligation as to the Business-Transfers. (<u>See</u> Motion, p. 8.) However, in light of the constraints of available information and the latitude to be extended, the Trustee has satisfied the pleading obligations.

As for what specific property was transferred, the property is the totality of the Companies as sole proprietorships. (<u>See</u> First Amended Complaint, ¶ 17 (Classic Car); ¶ 42 (Haunted House).) As the Defendant points out, the Trustee alleged that the Companies are sole proprietorships and sole proprietorships do not own assets – the proprietor does. (<u>See</u> Motion, p. 8.) Indeed, ironically, it is the nature of the Companies as sole proprietorships that stops the Trustee from knowing what exact property was transferred because that information is within the knowledge of the Debtor and the Defendant – who have refused to provide the information. Indeed, the Classic Car Company is in the business of restoring and reselling vintage cars and, thus, the specific cars change all the time. The same is true for the equipment to be used in connection with restoration. For the Haunted House, the program changes every year and, thus, the assets change again. The clear implication is that the Debtor was the proprietor – and thus owned all of the assets of the Companies – and then transferred those assets to the Defendant – which then made her the proprietor and owner of all of the assets (and, thus, removed those assets from collection and seizure by the Debtor's creditors).

9

As for when the transfers occurred, the Trustee has made the best allegations she can. With respect to the Classic Car Company, the Trustee has alleged that the Debtor listed the Company on a 2012 credit application and thus must have transferred the Classic Car Company to Mary Anne between 2012 and the petition date (March 27, 2015). (See id., ¶¶ 21-22.) With respect to the Haunted House, an article in 2013 reported that business being owned and operated by the Debtor and, thus, the transfer must have been sometime between 2013 and the petition date. (See id., ¶¶ 46-48.) Both of those claims, therefore, are within the 4 year statute of limitations.

Reading the Complaint in the light most favorable to the Trustee, including all reasonable inferences, this Court must conclude that the Trustee satisfied the pleading obligations.

Second, the allegations as to the Company-Related Transfers satisfy the pleading obligations. Tellingly, the Defendant did not attack the "Company-Related Transfers." (See Motion, pp. 7-10 (attacking the sufficiency only of the Classic Car Transfer and the Haunted House Transfer).) As the Defendant readily admits, the Company-Related Transfers are defined to be part of the "Transfers" which are the subject of the fraudulent transfer counts. (See id., p. 7 citing First Amended Complaint.) Thus, the Trustee has alleged at least one transfer category that is not claimed to be defective and the fraudulent transfer counts cannot be dismissed as a whole.[2]

---

[2] Notably, the Company-Related Services demonstrate the pickle the Trustee finds herself in because of the Debtor's claim of no records and the Defendant's refusal to provide documents and information. It also emphasized the need for latitude outlined in Madoff. The Company-Related Transfers essentially claims that the Debtor worked for and/or provided services to (or for the benefit) of the Defendant and/or the Companies. (See First Amended Complaint, ¶¶ 70-89; see also ¶ 13(c) -15 (generally describing the Schemes and listing this claim as "Uncompensated Services"). Based upon the limited information, the Trustee made specific and concrete allegations and provided examples of the Company-Related Transfers. (See id., ¶ 72-73.) However, practically speaking, the transfers complained of happened virtually every day. (See id., ¶ 80.) More problematic, there are absolutely no publicly available documents to identify those daily transfers because the very fraud itself means there are no payment records. As such, only the Debtor and the Defendant have that information. (See id., ¶ 81.)

## V. THE COURT SHOULD STAY DISPOSITION OF THE MOTION TO DISMISS UNTIL AFTER DISCOVERY IS CONDUCTED IN THIS CASE, THE MAIN CASE, AND/OR NON-DISCHARGE CASE.

As the Court may recall, there are pending discovery disputes in two related cases that have not been addressed. Those discovery disputes should be resolved and allowed to proceed to fruition prior to any adjudication on the pending Motion.

First, as outlined above, the Court in Madoff acknowledge that a trustee – as a stranger to the subject transactions – may need to conduct discovery to provide the level of detail the pleadings rules may require. See Madoff, 458 B.R., at 115 (discovery may be necessary for a trustee who has no access to debtor's books and records or books and records are in shambles). It is appropriate to allow at least limited discovery in this case before dismissing the entire complaint.

Second, in the related non-discharge case, prior to the filing of this instant lawsuit, The Cadle Company ("Cadle") issued a subpoena to the accounting firm that handled the taxes and accounting for both the Defendant and the Debtor (the "Accountant Subpoena"). (See Cadle Co. v. Anderson (In re Anderson), Adv. Proc. No. 16-0300, ECF No. 38 (motion for protective order filed by Defendant to stop deposition and subpoena of records).) The Accountant Subpoena sought tax returns for the Debtor, the Defendant, and Classic Car. (See id., Exhibit A thereto.) Those records are clearly relevant to the non-discharge case because: (a) the Debtor claims a lack of records; and (b) the bases for non-discharge includes unexplained disposition of assets. (See Cadle Co. v. Anderson (In re Anderson), Adv. Proc. No. 16-0300, ECF No. 1 (Count One - § 727(a)(3); Count Two - § 727(a)(5)).) However, adjudication of the Motion for Protective Order was stayed pending adjudication for the proceeding in this case. It is proper to allow discovery to continue on the Accountant Subpoena in the non-discharge case prior to adjudicating the instant Motion to Dismiss.

## VI.     CONCLUSION.

WHEREFORE, on the basis of the foregoing, the Motion to Dismiss must be denied.  In the alternative, adjudication should be stayed pending other proceedings, including discovery.

Dated at Hartford, Connecticut this 25th day of January, 2019.

<div style="margin-left: 3em;">

BARBARA H. KATZ, not individually, but solely as trustee of the bankruptcy estate of WILLIAM M. ANDERSON

By: /s/ C. Donald Neville
    One of Her Attorneys
    C. Donald Neville
    Kroll McNamara Evans & Delehanty, LLP
    65 Memorial Road, Suite 300
    West Hartford, CT 06107
    Main: 860.561.7070
    Direct: 860.761.1116
    dneville@kmelaw.com
    www.kmelaw.com| vCard

</div>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

|  |  |  |
|---|---|---|
| In Re: | ) | CHAPTER 7 |
|  | ) |  |
| WILLIAM M. ANDERSON, | ) | CASE NO. 15-30458 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| BARBARA H. KATZ, CHAPTER 7 TRUSTEE, | ) | ADV. PROC. NO. 17-03008 |
| Trustee. | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| WILLIAM M. ANDERSON AND MARY ANN ANDERSON, | ) |  |
| Defendants | ) |  |
|  | ) | JANUARY 25, 2019 |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2019 a copy of the foregoing was filed electronically on the Court's CM/ECF system (the "Pleading"). The Pleading was sent to parties entitled to notice electronically by operation of the Court's CM/ECF system or were sent to the parties unable to receive electronic notice by regular U.S. Mail.

William M. Anderson
21 Quentin Street
Waterbury, CT 06706-2726

By: /s/ C. Donald Neville
C. Donald Neville