UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No.: 15-30458 (AMN) |
| | : | |
| WILLIAM M. ANDERSON, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| BARBARA M. KATZ, CHAPTER 7 TRUSTEE, | : | A.P. Case No.: 17-03008 (AMN) |
| *Plaintiff* | : | |
| v. | : | |
| WILLIAM M. ANDERSON and MARY ANN ANDERSON, | : | |
| *Defendants* | : | |
| | : | RE: AP-ECF Nos. 40, 44 |

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

APPEARANCES

*Barbara H. Katz*
    *Plaintiff*

*C. Donald Neville, Esq.*
*Kroll, McNamara, Evans &*
*Delehanty, LLP*
*65 Memorial Road, Suite 300*
*West Hartford, CT 06107*

*Mary Ann Anderson*
    *Defendant*

*Timothy D. Miltenberger, Esq.*
*Coan Lewendon Gulliver & Miltenberger*
*495 Orange Street*
*New Haven, CT 06405*

*William M. Anderson, Pro Se Litigant*
    *Defendant*

*21 Quentin Street*
*Waterbury, CT 06706*

Before the court is Mary Ann Anderson's ("Ms. Anderson") motion seeking to

dismiss portions of an amended complaint (the "Amended Complaint") filed by Barbara

Katz, Chapter 7 Trustee ("Trustee"), or alternatively, a more definite statement (the

1

"Motion").[1]  AP-ECF Nos. 40, 44.[2]   The Amended Complaint was filed in response to the Court's Memorandum of Decision and Order Requiring a More Definite Statement that granted partial relief in response to Ms. Anderson's first motion to dismiss the claims against her.   AP-ECF No. 32.   Now, Ms. Anderson asserts that the Trustee's second attempt to allege actionable claims that purported transfers of property by the debtor William M. Anderson ("Debtor") to Ms. Anderson should be avoided for the benefit of creditors continue to lack sufficient specificity, and, that certain allegations fail to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6), made applicable here pursuant to Fed.R.Bankr.P. 7012.  *See*, AP-ECF No. 44.

After a comprehensive review of the pleadings and after discussion of the parties' positions during oral argument, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    JURISDICTION AND VENUE

The United States District Court for the District of Connecticut has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b).  This court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), and the bankruptcy court has the power to enter a final judgment in this adversary proceeding, subject to traditional rights of appeal.  This adversary proceeding arises under the Main Case pending in this District, and venue is proper pursuant to 28 U.S.C. § 1409.

---

[1]    On March 17, 2015 (the "Petition Date"), the Debtor commenced the underlying Chapter 7 bankruptcy case, Case No. 15-30458 (the "Main Case").
[2]    Citations to documents filed in the Main Case are cited as "ECF No."  Citations to documents filed in Adversary Proceeding No. 17-03008 are cited as "AP-ECF No."

## II.   PROCEDURAL HISTORY

Familiarity with the procedural posture of this matter and the Memorandum of Decision and Order Requiring a More Definite Statement ("Prior Decision") is assumed.[3] *See*, AP-ECF No. 32.   Consistent with the Prior Decision permitting the plaintiff time to amend her complaint, the Trustee filed the Amended Complaint discussed here, again alleging that over decades the Debtor and Ms. Anderson had engaged in numerous fraudulent schemes to the detriment of the Debtor's creditors.   AP-ECF No. 40.

The Debtor failed to file an answer.   *See,* AP-ECF Nos. 41, 72. Plaintiff has not sought a default against the Debtor, and he is a non-appearing *pro se* litigant in this adversary proceeding.[4]

Ms. Anderson filed the instant Motion seeking dismissal of the complaint because it fails to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012, or, seeking the filing of a more definite statement pursuant to Fed.R.Civ.P. 12(e) and Fed.R.Bankr.P. 7012.   AP-ECF No. 44.   The Trustee objected to the Motion.   AP-ECF No. 56.

During oral argument on the Motion, the Trustee suggested a court could not dismiss a portion of a count within a pleading as a matter of law, and the court ordered briefing on this additional issue.   *See*, AP-ECF No. 67.   On December 19, 2019, the Trustee filed a memorandum of law, and on January 10, 2020, Ms. Anderson filed a responsive memorandum of law.   *See*, AP-ECF Nos. 70, 71.

---

[3]      In the Prior Decision, I dismissed the Trustee's initial complaint pursuant to Fed.R.Civ.P. 12(e) and Fed.R.Bankr.P. 7012 and authorized the Trustee to file an amended complaint.   *See*, AP-ECF Nos. 1, 32.

[4]      An Order entered by the court on August 11, 2020, was mailed to the Debtor and later returned as undeliverable.   *See*, AP-ECF No. 76.

### III.    THE PLEADINGS AND ORAL ARGUMENT

#### a.  The Amended Complaint

The Amended Complaint sets forth the following seven counts:

| Count One | Claim for unjust enrichment seeking: |
|---|---|
| | • Imposition of constructive trust |
| | • Money damages against Ms. Anderson only. |
| | 11 U.S.C. §§ 544, 550[5] |
| Count Two | Claim for avoidance of intentional fraudulent transfers of assets seeking: |
| | • Injunction against disposition by both defendants |
| | • Money damages against Ms. Anderson |
| | • Imposition of a constructive trust. |
| | Conn.Gen.Stat. § 52-552e(a)(1) |
| | 11 U.S.C. §§ 544, 550 |
| Count Three | Claim for avoidance of constructive fraudulent transfer of assets seeking: |
| | • Injunction against disposition by both defendants |
| | • Money damages against Ms. Anderson |
| | • Imposition of a constructive trust. |
| | Conn.Gen.Stat. § 52-552e(a)(2) and 52-552h |
| | 11 U.S.C. §§ 544, 550. |
| Count Four | Claim for avoidance of constructive fraudulent transfers seeking: |
| | • Injunctive relief against both defendants |
| | • Money damages against Ms. Anderson |
| | • Imposition of a constructive trust of the assets |
| | Conn.Gen.Stat. § 52-552f(a) |
| | 11 U.S.C. §§ 544, 550 |
| Count Five | Claim for fraudulent transfer against Ms. Anderson |
| | 11 U.S.C. §§ 544, 550 |
| Count Six | Claim for intentional and constructive fraudulent transfers against Ms. Anderson |
| | 11 U.S.C. §§ 548, 550 |
| Count Seven | Claim for turnover |
| | 11 U.S.C. § 542 |

---

[5]    Unless otherwise noted, statutory citations are to Title 11, United States Code, commonly known as the Bankruptcy Code.

The Trustee adds, generally, that all applicable statutes of limitations should be tolled both pursuant to Conn.Gen.Stat. § 52-595, and, pursuant to unspecified equitable principles.  *See*, AP-ECF No. 40, ¶ 171-181.

i.  The Subjects of the Counts

In the Amended Complaint, the Trustee identifies the assets she seeks to recover for the estate as follows:[6]

1.  The Debtor's one-half (1/2) interest in "real property located at 2 Silver Pond, Wolcott, Connecticut (the "Home")."  AP-ECF No. 40, ¶ 129.

2.  Equity in the Home derived from mortgage payments paid using "significant value and income" obtained as a result of the other transfers.  AP-ECF No. 40, ¶ 91, 142–146.

3.  A sum of money used to pay a $50,000.00 down payment and to finance the purchase of "real property located at 1058 Wolcott Street, Waterbury, Connecticut which is the location of the [Classic Car Company and the Haunted House Business] (the "Commercial Property")."  AP-ECF No. 40, ¶ 97.

4.   Equity in the Commercial Property derived from mortgage payments paid using "significant value and income" obtained as a result of the other transfers.  AP-ECF No. 40, ¶ 91, 142–146.

5.  A sum of money used to purchase "real property located at 206 East Washington Street, Deland, Florida (the "Florida Property")."  AP-ECF No. 40, ¶ 115.

---

[6]     For clarity and ease of disposition, the Amended Complaint's allegations are set forth in chronological order, rather than as set forth in the pleading.

6. Equity in the Florida Property derived from mortgage payments paid using "significant value and income" obtained as a result of the other transfers.  AP-ECF No. 40, ¶ 91, 142–146.

7. A sole proprietorship "called Classic Car Restoration which is in the business of restoring classic and/or vintage cars for eventual resale and/or for specific customers (the "Classic Car Company")."  AP-ECF No. 40, ¶¶ 17–18.

8. A sole proprietorship "known as Nightmare on Wolcott Street which is in the business of running a haunted house in Wolcott, Connecticut (the "Haunted House Business")."  AP-ECF No. 40, ¶¶ 42–43.

9. The value of "significant personal services" provided by the Debtor during the four (4) years preceding the Petition Date "to or for the benefit of the Classic Car Company and the Haunted House Business . . . for which the Debtor was not properly compensated (the "Company-Related Services Transfers")."  AP-ECF No. 40, ¶ 70.

10. "[P]ersonal property in Connecticut, Florida, and elsewhere (the "Personal Property")."  AP-ECF No. 40, ¶ 151.

During oral argument on the Motion, counsel for the Trustee clarified that the Trustee intends to proceed only under Count 1 (Unjust Enrichment) with respect to the alleged transfers of the Home, the Commercial Property, the Florida Property, and Personal Property acquired before 2011.  AP-ECF No. 65, 00:28:10–00:30:33.  Ms. Anderson conceded the Amended Complaint states a claim for unjust enrichment regarding the Company-Related Services Transfers.  AP-ECF No. 65, 01:04:53–

01:06:06.   Accordingly, I do not address the portion of Count One relating to the Company-Related Services Transfers, and it proceeds.

ii.   Factual Allegations

The Debtor and Ms. Anderson married in 1972, but initiated divorce proceedings on or about February 20, 1990.   AP-ECF No. 40, ¶¶ 9–10.   Despite dissolving their marriage, the Debtor and Ms. Anderson maintain a marriage-like relationship and hold themselves out as married.   AP-ECF No. 40, ¶ 11.

Prior to the dissolution of their marriage, the Debtor and Ms. Anderson purchased the Home.   AP-ECF No. 40, ¶ 130.   On or about January 9, 1990, prior to or amid a police investigation,[7] the Debtor transferred his one-half (1/2) interest in the Home to Ms. Anderson without receiving anything of value in return.   AP-ECF No. 40, ¶¶ 132, 134-36. Concurrently with the transfer of the Debtor's interest in the Home, a loan guaranteed by the Debtor in the amount of $4,000,000.00 went into default.   AP-ECF No. 40, ¶ 133. Despite transferring the Home to Ms. Anderson, the Debtor has resided at the Home, received mail there, and indicated on a credit application that he owns the Home and pays the mortgage.   AP-ECF No. 40, ¶¶ 139–40.

On or about August 1, 2003, Ms. Anderson acquired the Commercial Property for a down payment of $50,000.00 and financing of $250,000.00, for a total purchase price of $300,000.00.   AP-ECF No. 40, ¶¶ 98–99.   The Debtor provided the funds used to make the down payment and obtain financing.   AP-ECF No. 40, ¶¶ 100–02. Alternatively, Ms. Anderson used funds resulting from other transfers to acquire the Commercial Property. AP-ECF No. 40, ¶ 109.

---

[7]   The impetus of the police investigation is not included in the Amended Complaint, though the Trustee alleges the Debtor was imprisoned as a result of the police investigation.   AP-ECF No. 40, ¶ 132.

In February 2010, Ms. Anderson purchased the Florida Property using funds provided by the Debtor or using funds derived from other transfers from the Debtor.  AP-ECF No. 40, ¶¶ 116–18.

Ms. Anderson continues to own the Home, the Commercial Property, and the Florida Property; makes mortgage payments on the three properties; and has acquired equity in the properties.  AP-ECF No. 40, ¶¶ 97, 115, 129, 142–46.  Ms. Anderson uses value derived from the other transfers to make the mortgage payments and build equity in the properties.  AP-ECF No. 40, ¶¶ 144–46.

In 2012, the Debtor stated on a credit application that he owned the Classic Car Company.  AP-ECF No. 40, ¶ 20–21.  In addition, the Debtor represented on the credit application that he earned hundreds of thousands of dollars per year operating the Classic Car Company during the ten (10) years preceding the application.  AP-ECF No. 40, ¶ 21. Between 2012 and the Petition Date in 2015, the Debtor transferred the Classic Car Company to Ms. Anderson without receiving anything in exchange, rendering the Debtor insolvent.  AP-ECF No. 40, ¶¶ 23, 29–30, 69.  The Classic Car Company had value when transferred to Ms. Anderson.  AP-ECF No. 40, ¶ 28.  Despite transferring the Classic Car Company to Ms. Anderson, the Debtor continues to spend time on the premises of the Classic Car Company and remains involved in its operation and management.  AP-ECF No. 40, ¶¶ 36, 38.  During the four (4) years preceding the Petition Date, the Debtor has managed and supervised the operations of the Classic Car Company, while Ms. Anderson spends no time at the premises, has no experience restoring cars, and performs no managerial or supervisory role.  AP-ECF No. 40, ¶¶ 33–39.

In a November 2013 news article, the Debtor's daughter stated the Debtor owned the Haunted House Business. AP-ECF No. 40, ¶ 47. Ms. Anderson's tax returns indicate she acquired the Haunted House Business in 2013; yet, the Debtor received nothing in exchange for the Haunted House Business, and the transfer rendered him insolvent. AP-ECF No. 40, ¶¶ 45, 56, 69. As with Classic Car Company, the Debtor continues to spend time on the premises of the Haunted House Business and remained involved in operating and managing the business for the four (4) years preceding the Petition Date. AP-ECF No. 40, ¶¶ 61, 63, 65–66. By contrast, Ms. Anderson has no experience running the Haunted House Business, spends no time on the premises, and performs no managerial or supervisory role. AP-ECF No. 40, ¶¶ 60, 62, 64.

Although the Debtor has managed and operated the Classic Car Company and the Haunted House Business during the four (4) years preceding the Petition Date, the Debtor has not received proper compensation. AP-ECF No. 40, ¶¶ 70, 75–78. As described by the Trustee, the Debtor's services comprising the Company-Related Services Transfers include:

(a)     [D]irect services relating to restoring classic and/or vintage cars for eventual resale and/or for specific customers of the Classic Car Company;
(b)     supervision of others doing direct services for the Classic Car Company;
(c)     direct services relating to the preparation and operation of the Haunted House Business;
(d)     direct services for the management of the Haunted House Business;
(e)     corporate management services for the [Classic Car Company and the Haunted House Business]; and
(f)     similar services.
AP-ECF No. 40, ¶ 71.

More specifically, the Debtor restored certain vehicles for the Classic Car Company, which were sold at auction. AP-ECF No. 40, ¶ 72. In April of 2011, the Classic Car Company received $139,780.00 in proceeds after auctioning off certain restored vehicles at the Barrett-Jackson Auto Auction. AP-ECF No. 40, ¶ 72. In May of 2012, the Classic Car Company received $75,510.00 in proceeds after auctioning off additional vehicles restored by the Debtor. AP-ECF No. 40, ¶ 72. These proceeds accrued to Ms. Anderson, and the Debtor did not receive compensation or reasonably equivalent value.[8] AP-ECF No. 40, ¶¶ 72–77.

Finally, Ms. Anderson owns Personal Property she obtained using funds provided by the Debtor or through value derived from the other transfers. AP-ECF No. 40, ¶¶ 151–153, 157–160, 162.

Ms. Anderson used the proceeds of the transferred assets and the Company-Related Services Transfers to support herself, the Debtor, and their family. AP-ECF No. 40, ¶ 14. To that end, the transfer of the Home, Classic Car Company, the Haunted House Business, and the Company-Related Services Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors. AP-ECF No. 40, ¶¶ 31, 58, 79, 137.

> b. Ms. Anderson's Motion

In support of her Motion, Ms. Anderson asserts, generally, that the Amended Complaint "repeatedly fails to identify what property the [D]ebtor owned that he

---

[8]    The Trustee alleges these transfers are part of a pattern of conduct the Debtor and Ms. Anderson have engaged in, as also shown by a December 1991 promissory note the Debtor transferred to Ms. Anderson for no consideration purportedly to protect the proceeds from the reach of the Debtor's creditors. AP-ECF No. 40, ¶¶ 85-89. In her 2000 bankruptcy filing, Ms. Anderson listed the promissory note as her sole source of income. AP-ECF No. 40, ¶ 88.

transferred to Ms. Anderson," and the fraudulent transfer claims should be dismissed on that basis.  AP-ECF No. 44, p.2.  Ms. Anderson adds that the Trustee's unjust enrichment claim as it relates to the transfer of the Home is barred by laches.  AP-ECF No. 44, pp. 3–6.  With respect to the alleged transfers of the Classic Car Company and the Haunted House Business, Ms. Anderson asserts that sole proprietorships are not separate legal entities and absent allegations of the transfer of assets or liabilities, the Amended Complaint cannot adequately plead these transfers.  AP-ECF No. 44, pp. 8–10.  Finally, Ms. Anderson argues that dismissal of the claim seeking turnover is proper because the Trustee has not yet prevailed on her equitable claims.  AP-ECF No. 44, pp. 6–7.  During oral argument, Ms. Anderson's counsel argued that the allegations of Company-Related Services Transfers do not otherwise state a fraudulent transfer cause of action because services are not assets or property.  AP-ECF No. 65, 01:04:53–01:06:06.

c.  The Trustee's Objection

In her objection to Ms. Anderson's Motion, the Trustee responds that "the lack of specificity is due to the breath and success of the decades long fraud [Ms. Anderson] and the Debtor conducted," and asserts she is entitled to the relaxed pleading standard courts in the Second Circuit grant to bankruptcy trustees.  AP-ECF No. 56, pp. 1, 5–8.  Regarding the laches defense, the Trustee cites cases requiring clean hands of a defendant raising equitable defenses such as laches and asserts that a court cannot resolve a laches defense at the motion to dismiss stage because a successful laches defense requires detailed factual findings.  AP-ECF No. 56, pp. 2–4.  The Trustee further argues that the turnover count should not be dismissed because the Trustee has pleaded in the alternative that Ms. Anderson is in possession of property of the bankruptcy estate.  AP-

11

ECF No. 56, p. 4.  Though acknowledging that a sole proprietorship is not a separate entity, the Trustee emphasizes the implication of the allegations of the Classic Car Company and Haunted House Business transfers was that the assets of the sole proprietorships were transferred by the Debtor to Ms. Anderson and further notes that the nature of sole proprietorships permits the Debtor and Ms. Anderson to conceal the transfer of the sole proprietorships' assets and liabilities.  AP-ECF No. 56, 9–10.  Lastly, the Trustee suggests that the court stay resolution of Ms. Anderson's Motion pending further discovery due to the Trustee's inability to investigate Ms. Anderson's and the Debtor's financial circumstances prior to filing the Amended Complaint.  AP-ECF No. 56, p. 11.

## IV.    APPLICABLE LAW

### a.  Motions to Dismiss

Fed.R.Civ.P. 8(a)[9] provides, "[a] pleading that states a claim for relief must contain . . . (2) a short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  Fed.R.Civ.P. 12(b)(6) permits a motion to dismiss a cause of action based upon "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Allegations are plausible where they "raise a right to relief above the speculative level."  *Fin. Guar. Ins. Co. v. Putnam*

---

[9]    Fed.R.Civ.P. 8 is made applicable here by Fed.R.Bankr.P. 7008; Fed.R.Civ.P. 12 is made applicable by Fed.R.Bankr.P. 7012; and Fed.R.Civ.P. 9 is made applicable by Fed.R.Bankr.P. 7009.

*Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In determining whether a motion to dismiss should be granted, the court "accept[s] as true all allegations in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *Gonzales v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### 1.  Pleading Fraud

While a short plain statement suffices for purposes of Rule 8(a), allegations of fraud are governed by Fed.R.Civ.P. 9(b), which states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  As discussed in more detail below, allegations of intentional fraudulent transfers are subject to Rule 9(b)'s heightened specificity requirements.  *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

### b.  Motions For a More Definite Statement

Where relief is sought pursuant to Fed.R.Civ.P. 12(e), a court may decline to dismiss a pleading and instead require the filing of an amended pleading where the initial pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed.R.Civ.P. 12(e).

c.  Unjust Enrichment and Constructive Trust

Under Connecticut law, to assert a claim of unjust enrichment against Ms. Anderson, the Trustee must plead (1) that the defendant Ms. Anderson was benefited, (2) that Ms. Anderson unjustly did not pay the Trustee or someone on whose behalf the Trustee may now sue for the benefits, and (3) that the failure of payment was to the Trustee's detriment.  *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (Conn. 2006). Because an unjust enrichment claim is an equitable claim for relief, "its timeliness is not subject to a statute of limitations but, rather, to the equitable doctrine of laches." *Reclaimant Corp. v. Deutsch*, 332 Conn. 590, 613 (Conn. 2019).  Courts may look to a statute of limitations "by analogy" but "are by no means obliged to adhere to those time limitations." *Reclaimant Corp.*, 332 Conn. at 613; *see also*, *Mahon v. Chicago Title Ins. Co.*, No. 3:09CV00690 AWT, 2012 WL 3544883, at *2 n.1 (D. Conn. Aug. 16, 2012) (observing that Connecticut courts have occasionally applied the six (6) year statute of limitations for breach of contract claims  set forth in Conn.Gen.Stat. § 52–576(a) to unjust enrichment claims).[10]   A constructive trust is a remedy a court may impose where a defendant is liable for unjust enrichment.  *Cendant Corp. v. Shelton*, 474 F.Supp.2d 377, 383 (D.Conn. 2007).

Because § 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the bankruptcy estate, a bankruptcy trustee may stand in the shoes of the debtor and assert causes of action the debtor held on the petition date.  11 U.S.C. § 541(a)(1); *see*, *Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005); 5 Collier on Bankruptcy ¶ 541.07 (16th ed. 2020).  Thus, a trustee

---

[10]      A breach of contract claim under Florida law is subject to a five (5) year statute of limitations. Fla.Stat. § 95.11(2)(b).

may assert unjust enrichment claims held by a debtor on the petition date. *See, Tese-Milner v. Edidin & Assoc. (In re Operations NY LLC)*, 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013) (declining to dismiss a Chapter 7 trustee's unjust enrichment claim); *see also*, *O'Neil v. N. England Road, Inc. (In re Neri Bros. Constr. Corp.)*, 593 B.R. 100, 155 (Bankr. D. Conn. 2018) (finding the Chapter 7 trustee had established unjust enrichment, meriting a $686,241.61 award).

> d. Avoidance of Transfers Pursuant to § 544 (Trustee as lien creditor and as successor to certain creditors and purchasers), § 548 (Fraudulent transfers and obligations), and § 550 (Liability of transferee of avoided transfer)

The "strong arm powers" granted by § 544 allow a trustee to avoid transfers as a lien creditor of the debtor and as a successor to certain creditors and purchasers, including *bona fide* purchasers of real property. *See*, 11 U.S.C. § 544(a). A trustee may also avoid specified transfers under state law and recover the proceeds for the bankruptcy estate. 11 U.S.C. §§ 544(b)(1), 550. In the Amended Complaint, the Trustee seeks to avoid the transfers of property to Ms. Anderson under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn.Gen. Stat. §§ 52-552a, *et seq.*, which creates causes of action and remedies for intentional (or actual) fraudulent transfers and constructive fraudulent transfers.

Like CUFTA, the Bankruptcy Code permits a trustee to avoid intentional and constructive fraudulent transfers pursuant to § 548. Under § 550, a trustee may recover for the benefit of the bankruptcy estate the property subject to transfers proven to be fraudulent. Other than the four-year look-back period provided by CUFTA – as opposed to the two-year look-back period set forth in § 548 – the standards for avoiding fraudulent

transfers under the two statutes are not "materially different."[11]   *In re Carrozzella &*

*Richardson*, 302 B.R. 415, 419 (Bankr.D.Conn. 2003); *compare*, Conn.Gen.Stat. § 52-

552j *with* 11 U.S.C. § 548(a)(1).

1.   Intentional Fraudulent Transfer Claims

Counts 2 of the Amended Complaint seeks relief under Conn.Gen.Stat. §§ 52-

552e(a)(1) and 52-552h.   Conn.Gen.Stat. § 52-552e(a)(1) allows a creditor to avoid

intentional fraudulent transfers and provides as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor, if the creditor's claim arose before the transfer was made or the
> obligation was incurred and if the debtor made the transfer or incurred the
> obligation: (1) With actual intent to hinder, delay or defraud any creditor of
> the debtor.
> Conn.Gen.Stat. § 52-552e(a).

Conn.Gen.Stat. § 52-552h governs the remedies that may be available to the

Trustee upon establishing her entitlement to relief.   It states:

> (a) In an action for relief against a transfer or obligation under sections 52-
> 552a to 52-552l, inclusive, a creditor, subject to the limitations in section 52-
> 552i, may obtain: (1) Avoidance of the transfer or obligation to the extent
> necessary to satisfy the creditor's claim; (2) an attachment or other
> provisional remedy against the asset transferred or other property of the
> transferee in accordance with the procedure prescribed by chapter 903a;1
> (3) subject to applicable principles of equity and in accordance with
> applicable rules of civil procedure (A) an injunction against further
> disposition by the debtor or a transferee, or both, of the asset transferred or
> of other property, (B) appointment of a receiver to take charge of the asset
> transferred or of other property of the transferee, or (C) any other relief the
> circumstances may require.

> (b) If a creditor has obtained a judgment on a claim against the debtor, the
> creditor, if the court so orders, may levy execution on the asset transferred
> or its proceeds.

---

[11]    As noted in the Prior Decision, neither party has taken a position on whether Connecticut law or
Florida law applies to the transfer of the Florida Property.  The distinction is immaterial, however, because
Florida fraudulent transfer law – like CUFTA – imposes the same standard as the Bankruptcy Code but
with a more generous four (4) year look-back period.  *See, In re Pearlman*, 515 B.R. 887, 894 (Bankr. M.D.
Fla. 2015); *see also*, Fla.Stat. § 726.110.

Conn. Gen. Stat. § 52-552h.

In Count 6 of the Amended Complaint, the Trustee seeks to avoid the allegedly intentional fraudulent transfers from the Debtor to Ms. Anderson under § 548, which provides that the Trustee may avoid a transfer of "an interest of the [D]ebtor in property" made within two (2) years of the Petition Date if she proves the Debtor "made such transfer . . . with actual intent to hinder, delay, or defraud" the Debtor's creditors.  11 U.S.C. § 548(a)(1)(A).

The remedies available to a trustee who establishes the existence of a fraudulent transfer are set forth in § 550, which provides in pertinent part:

> (a) [T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from— (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee.
> 11 U.S.C. § 550.

As noted, intentional fraudulent transfer claims must be pleaded with particularity. Accordingly, Rule 9(b) "places two further burdens on fraud plaintiffs – the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  In the context of intentional fraudulent transfers, a plaintiff must allege the circumstances of the transfer, namely, "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto." *In re Bernard L. Madoff Investment Securities*

*LLC*, 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011).   Allegations of the transferor's mental

state, *i.e.*, intent, may be pleaded generally, but a plaintiff "must nonetheless allege facts

that give rise to strong inference of fraudulent intent."   *Loreley Fin.*, 797 F.3d at 171

(internal quotations omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6),

the facts as pleaded must allow a reasonable person to draw an "inference of scienter."

*In re Lyondell Chem. Co.*, 554 B.R. 635, 652 (S.D.N.Y. 2016) (quoting *Employees*

*Retirement Sys. of Gov. of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir.

2015)).

To overcome the difficulty inherent in establishing fraudulent intent, a plaintiff "may

rely on 'badges of fraud' – 'circumstances so commonly associated with fraudulent

transfers that their presence gives rise to an inference of intent.'"   *In re Bos. Generating*

*LLC*, __ B.R. __, __, No. 10-14419 (SCC), 2020 WL 3286207, at *21 (Bankr. S.D.N.Y.

June 18, 2020) (quoting *Techno-Comp. Inc. v. Arcabascio*, 130 F. Supp.3d 734, 745

(E.D.N.Y. 2015)).   "Badges of fraud" include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or
> close associate relationship between the parties; (3) the retention of
> possession, benefit or use of the property in question; (4) the financial
> condition of the party sought to be charged both before and after the
> transaction in question; (5) the existence or cumulative effect of a pattern or
> series of transactions of conduct after the incurring of debt, onset of financial
> difficulties, or pendency or threat of suits by creditors; and (6) the general
> chronology of the events and transactions under inquiry.
> *In re Kupersmith*, 614 B.R. 428, 438 (Bankr. D. Conn. 2020) (quoting *In re Kaiser*,

722 F.2d at 1574, 1582–83 (2d Cir. 1983)).

Pleading a single badge of fraud is insufficient to show actual fraudulent intent;

however, "the confluence of several can constitute conclusive evidence of an actual intent

18

to defraud, absent significantly clear evidence of a legitimate supervening purpose." *Operations NY LLC*, 490 B.R. at 95 (internal quotations omitted).

Finally, "where a bankruptcy trustee is the party asserting the intentional fraudulent transfer claim, the Second Circuit has adopted a more liberal view . . . since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Bos. Generating LLC*, __ B.R. at __, 2020 WL 3286207, at *20 (internal quotations omitted) (quoting *Picard v. Cohmad Sec. Corp. et al. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)). Nonetheless, "relaxing the particularity requirement of Rule 9(b) does not eliminate it." *Picard v. Madoff* (*In re Bernard L. Madoff Inv. Sec. LLC*), 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011) (internal quotations omitted) (citing *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987)). A trustee's allegations of fraud "still must be particular enough to fulfill Rule 9(b)'s purpose: 'to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties.'" *Madoff*, 458 B.R. at 106 (quoting *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 92 (Bankr. S.D.N.Y. 2010)).

2. Constructive Fraudulent Transfer Claims

In Counts 3 and 4, the Amended Complaint seeks relief under Conn.Gen.Stat. § 52-552e(a)(2) and Conn.Gen.Stat. § 52-552f(a), which both address constructively fraudulent transfers. To recover property subject to a constructive fraudulent transfer under Conn. Gen. Stat. § 52-552e(a)(2), the Trustee must satisfy the following requirements:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in

19

exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
Conn.Gen.Stat. § 52-552e(a).

To recover property subject to a constructive fraudulent transfer under Conn. Gen. Stat. § 52-552f, the Trustee must satisfy the following requirements:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.
Conn. Gen. Stat. § 52-552f.

In addition to permitting avoidance of intentional fraudulent transfers, § 548 allows the Trustee to avoid constructive fraudulent transfers. *See*, 11 U.S.C. § 548(a)(1)(B). A transfer of a debtor's interest in property is constructively fraudulent if the debtor:

(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
11 U.S.C. § 548(a)(1)(B).

20

Because constructive fraudulent transfers are concerned not with the transferor's intent but with the transferor's financial position at the time of the transfer and the sufficiency of the consideration, the additional pleading requirements of Rule 9(b) are inapplicable. *In re Derivium Capital, LLC*, 380 B.R. 429, 439 (Bankr. D.S.C. 2006). "Instead, the pleading standards of Rule 8 . . . apply, subject, of course, to the 'plausibility' requirements of *Iqbal* and *Twombly*." *Bos. Generating LLC*, __ B.R. at __, 2020 WL 3286207, at *20 (internal quotations omitted) (quoting *Techno-Comp. Inc.*, 130 F. Supp.3d at 746).

### 3.  Interest in Property Subject to Transfer

Property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," including earnings from pre-petition services.  11 U.S.C. § 541(a)(1); *see*, 11 U.S.C. § 541(a)(6) (excluding post-petition "earnings from services performed by an individual debtor" from the property of the bankruptcy estate).

Under the Bankruptcy Code, a "transfer" broadly embraces "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).  "[T]he hallmark of a 'transfer' is a change in the rights of the transferor with respect to the property after the transaction." 2 Collier on Bankruptcy ¶ 101.54 (16th ed. 2020) (quoting *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 338 (Bankr. N.D. Cal. 2009)).  "In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).

CUFTA likewise defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Conn. Gen. Stat. § 52-552b(12). CUFTA defines an "asset" as "property of a debtor," excluding "[p]roperty to the extent it is encumbered by a valid lien, (B) property to the extent it is generally exempt under nonbankruptcy law, or (C) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Conn. Gen. Stat. § 52-552b(2). "Property" is defined as "anything that may be the subject of ownership." Conn. Gen. Stat. § 52-552b(10). Black's Law Dictionary similarly defines "property" as, "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised." *Property Definition*, Black's Law Dictionary (11th ed. 2019). Thus, to avoid fraudulent transfers under § 548 and CUFTA, the Trustee must establish that the Debtor held an ownership interest in property recognized under Connecticut law and that he relinquished that ownership interest to Ms. Anderson through a transfer.

Connecticut courts have recognized "the fraud of diversion of the fruits of one's labor" and granted relief under CUFTA on this theory. *Cadle Co. v. Steiner*, No. CV054018721S, 2011 WL 925450, at *2–7 (Conn. Super. Feb. 10, 2011) (internal quotations omitted); *see*, *Cadle Co. v. Zubretsky*, No. CV040832477S, 2008 WL 441935, at *5–6 (Conn. Super. Jan. 30, 2008). Although the underpinnings of this doctrine remain unclear, the fruits of one's labor theory appears derived from the concept of reverse veil-piercing, which in effect restrains individuals from secreting assets in a corporate form. *See*, *Steiner*, 2011 WL 925450, at *2; *see also*, *Cadle Co. v. Ogalin*, 495 F. Supp. 2d 278,

284–87 (D. Conn. 2007).  In the bankruptcy context, debtors found to have diverted the fruits of their labor have been denied discharge pursuant to 11 U.S.C. § 727(a)(2)(A) upon a finding that property of the debtor was transferred with intent to hinder, delay, or defraud a creditor.  *See*, *e.g.*, *In re Klutchko*, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005) ("[N]umerous courts have found that debtors who transferred all of their salary, or their right to receive salary, to a family member or to a corporation owned by a family member, yet retained the benefits of such salary, as here, should be denied a discharge."); *In re Ogalin*, 303 B.R. 552, 561 (Bankr. D. Conn. 2004).

  e. Turnover

  As set forth in § 542(b), a trustee may compel an entity in possession of property of the estate to turn over that property to the trustee.  *See*, 11 U.S.C. § 542(b).  To state a cause of action for turnover of estate property, the Trustee must plead: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate."  *Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442, 460 (Bankr. E.D.N.Y. 2018); *see also*, 5 Collier on Bankruptcy ¶ 542.03 (16th ed. 2019).  "Fraudulently transferred property does not, however, become property of the estate until *after* it has been recovered."  *Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) (citing *FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 131 (2d Cir.1992)).

  f. Statute of Limitations; Equitable Tolling

  Connecticut statute provides that "[i]f any person, liable to an action by another fraudulently conceals from him the existence of the cause of such action," the

consequence is that "such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Conn.Gen.Stat. § 52-595. To plead fraudulent concealment and toll the statute of limitations applicable to the Trustee's state law claims, the Trustee must allege: (1) Ms. Anderson's "actual awareness, rather than imputed knowledge of the facts necessary to establish" the Trustee's cause of action; (2) Ms. Anderson's "intentional concealment" of these facts from the Trustee; and (3) that Ms. Anderson's concealment of the facts was for the purpose of delaying the trustee from filing a complaint on her cause of action. *Carson v. Allianz Life Ins. Co. of N. Am.*, 184 Conn. App. 318, 326 (Conn. App. 2018) (citing *Bartone v. Robert L. Day Co.*, 232 Conn. 527, 533 (Conn. 1995)).

With respect to the Trustee's claims under the Bankruptcy Code,[12] "[t]he doctrine of equitable tolling is 'read into every federal statute of limitation.'" *In re Milby*, 875 F.3d 1229, 1232 (9th Cir. 2017) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). Thus, if there are "extraordinary or exceptional circumstances," the common law doctrine of equitable tolling allows a court to "extend a statute of limitations on a case-by-case basis to prevent inequity, even when the limitations period would otherwise have expired." *United States v. All Funds Distributed To, or o/b/o Weiss*, 345 F.3d 49, 54–55 (2d Cir. 2003) (internal citations omitted). "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for [the] lateness in filing." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011); *see also*,

---

[12]    Courts are not in agreement about whether the two-year limitation on fraudulent transfer claims brough pursuant to § 548 may be equitably tolled. *Compare*, *In re Stanwich Fin. Servs. Corp.*, 291 B.R. 25, 28 (Bankr. D. Conn. 2003) (concluding that all federal statutes of limitations may be equitably tolled), *with In re Petters Co., Inc.*, 557 B.R. 711, 723 (Bankr. D. Minn. 2016) (concluding that "a period of time that is a substantive element of the cause of action may not" be equitably tolled).

*Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) ("The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.") (internal quotations omitted).  As a procedural matter, equitable tolling is interposed in response to a statute of limitations defense.  *See*, *In re Walnut Hill, Inc.*, No. 16-20960 (JJT), 2018 WL 2672242, at *2 (Bankr. D. Conn. June 1, 2018) (citing *Long v. Abbott Mortg. Corp.*, 459 F. Supp. 108, 113 (D. Conn. 1978)).

To obtain the benefit of the doctrine, the Trustee bears the burden of establishing that she, "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), as amended (July 29, 2003) (internal quotations omitted); *see also*, *Milby*, 875 F.3d at 1234–35 (finding the trustee acted diligently while the subject transfers were concealed).

g.  Laches

The equitable defense of laches allows a defendant to defeat a plaintiff's claims where the defendant shows "the plaintiff has inexcusably slept on [its] rights so as to make a decree against the defendant unfair," and that the defendant "has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d Cir. 2019) (quoting *Merrill Lynch Inv. Managers v. Optibase Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003)).  Accordingly, to raise a laches defense, Ms. Anderson must show both unreasonable delay on the part of the Trustee – or someone on whose behalf she may sue – and resulting prejudice to Ms. Anderson.  *See*, *Zuckerman*, 928 F.3d at 190; *Town of Glastonbury v. Metro. Dist. Comm'n*, 328 Conn.

326, 341 (Conn. 2018). Ms. Anderson "must have suffered some amount of prejudice to successfully invoke laches, even if [the plaintiff has] a weak or no excuse for [the] delay." *In re Fairchild*, 285 B.R. 98, 101 (Bankr.D.Conn. 2002) (citing *In re Caicedo,* 159 B.R. 104, 106–07 (Bankr.D.Conn. 1993)). To establish the required prejudice, Ms. Anderson "must demonstrate that the delay caused [her] a disadvantage in asserting and establishing a claimed right or defense." *In re Saucier*, 353 B.R. 383, 386 (Bankr.D.Conn. 2006) (quoting *In re Bianucci*, 4 F.3d 526, 528 (7th Cir.1993)). Although passage of time alone is insufficient to establish prejudice, "delay may be prejudicial when it is combined with other factors." *Saucier*, 353 B.R. at 386 (quoting *Bianucci*, 4 F.3d at 528). A court may dismiss a claim based on the affirmative defense of laches where the elements of laches are evident on the face on the complaint. *Zuckerman*, 928 F.3d at 193; *accord*, *Town of Glastonbury*, 328 Conn. at 341 ("A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made [as a matter of law], unless the subordinate facts found make such a conclusion inevitable.") (alteration in original).

   h.  The Nature of Sole Proprietorships

   A sole proprietorship "has no legal existence apart from its owner." *Lattanzio v. COMPTA*, 481 F.3d 137, 140 (2d Cir. 2007). Unlike corporations, sole proprietorships are not separate entities, and a sole proprietorship's income and expenses are those of its owner. *In re APCO Merch. Servs., Inc.*, 585 B.R. 306, 318 (Bankr. E.D.N.Y. 2018); *Nat'l Fire Ins. Co. of Hartford v. Beaulieu Co., LLC*, 140 Conn. App. 571, 584 (Conn.App. 2013), *see also*, *Mercadant v. Kvinta*, No. LLICV164016048S, 2016 WL 7132308, at *2 n.3 (Conn.Super. Oct. 25, 2016); *Sole Proprietorship Definition*, Black's Law Dictionary (11th ed. 2019) ("A business in which one person owns all the assets, owes all the

liabilities, and operates in his or her personal capacity.").  It follows that a sole proprietor must individually transfer the sole proprietorship's assets and liabilities to divest his or her interest in the sole proprietorship.

Because assets of a sole proprietorship are assets of the debtor, assets transferred out of a sole proprietorship owned by the debtor may be the subject of a fraudulent transfer claim.  *See*, *In re Pigg*, 515 B.R. 274, 278–80 (Bankr. D.S.C. 2014) (concluding that a motion for default judgment should be granted with respect to the trustee's allegations that "the name, any assets, inventory or other property of any nature" of a sole proprietorship were fraudulently transferred pursuant to § 548(a) and state law), *aff'd*, No. 3:14-CV-03210-JFA, 2014 WL 4536642 (D.S.C. Sept. 9, 2014).  Additionally, transferring assets out of a sole proprietorship with an intent to hinder, delay, or defraud creditors may be grounds for denial of a discharge pursuant to § 727(a)(2)(A).  *See*, *e.g.*, *In re Wreyford*, 505 B.R. 47, 53 (Bankr. D.N.M. 2014) (denying discharge where debtors transferred by a bill of sale "all inventory, equipment, fixtures, trade fixtures, tenant improvements, accounts, general intangibles, trade names, executory contracts or leases, and all other assets of any type" from a sole proprietorship to an limited liability corporation they owned); *In re Schnurr*, 107 B.R. 124, 130 (Bankr. W.D. Tex. 1989) (denying discharge where debtor transferred income-producing assets from a sole proprietorship he owned to a corporation where he held a one hundred percent (100%) ownership interest); *In re Hurley*, No. 03-16467-JNF, 2007 WL 1455983, at *6–7 (Bankr. D. Mass. May 15, 2007) (denying discharge to debtor who transferred all assets of his sole proprietorship to a corporation in which he held a ninety-seven percent (97%) stake); *cf. Matter of Green*, 122 B.R. 376, 377–78 (Bankr. D. Neb. 1990) (declining to deny

discharge to a debtor who transferred his interest in the assets of a sole proprietorship to his wife because the assets transferred were subject to a security interest, the debtor received valid consideration, and the bill of sale effecting the transfer was properly recorded).

i.   Dismissal of a Portion of a Count

Fed.R.Civ.P. 8(a) requires that a pleading include "a short and plain statement of the claim showing the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Dismissal of a claim is proper where it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Federal Rules of Civil Procedure do not prohibit a court from dismissing a meritless claim that is tacked to a claim upon which relief may be granted. In fact, courts routinely dismiss portions of claims where relief cannot be granted as to some, but not all, factual allegations or defendants.  *See*, *e.g.*, *GE Transportation Parts, LLC v. Cent. Ry. Mfg., LLC*, No. 19-CV-4826 (AJN), 2020 WL 3448018, at *7 (S.D.N.Y. June 24, 2020); *Miranda v. S. Country Cent. Sch. Dist.*, No. 20-CV-104 (BMC), 2020 WL 2563091, at *5, *9 (E.D.N.Y. May 21, 2020); *Hughes v. City of Hartford*, 96 F. Supp. 2d 114, 121 (D. Conn. 2000).  To hold otherwise would permit meritless claims to proceed based only on the proficiency of the pleading's drafter.[13]

## V.    DISCUSSION

Preliminarily, in light of the Prior Decision and the filing of the Amended Complaint, I decline to direct the Trustee to again file a more definite statement pursuant to Fed.R.Civ.P. 12(e), and Ms. Anderson's Motion is denied to the extent it seeks that form of relief.

---

[13]    The Trustee cites no authority to support her proposition that a court must either dismiss a count in full or allow it to proceed.

The Amended Complaint is not a model of clarity. Rather than plainly stating which counts correspond to which assets, the Trustee leaves to the court the task of discerning the facts applicable to each cause of action.

### a. Unjust Enrichment (Count 1)

#### i. The Home, the Commercial Property, the Florida Property, and the equity in each property

The Trustee's unjust enrichment claim pertaining to the Home, the Commercial Property, and the Florida Property cannot proceed against Ms. Anderson because the elements of laches are evident on the face of the Amended Complaint. First, twenty-seven (27) years elapsed between the transfer of the Home and the date the Trustee filed her initial complaint on March 10, 2017; almost fourteen (14) elapsed after the transfer of the Commercial Property; and seven (7) years elapsed after the transfer of the Florida Property. *See*, AP-ECF No. 40, ¶¶ 98, 116, 135. By standing in the shoes of the Debtor to assert the Debtor's causes of action pursuant to § 541, the Trustee inherited the time that had run from the date each unjust enrichment cause of action arose and then waited another two (2) years to file a complaint. *See*, 5 Collier on Bankruptcy ¶ 541.07 (16th 2020). As noted, courts may use statutes of limitations by analogy when assessing unjust enrichment claims. The statute of limitations for a fraudulent transfer under Connecticut (and Florida) law is four (4) years, while the statute of limitations for breach of contract actions under Connecticut law is six (6) years. The time elapsed since the respective transfers of the Home, the Commercial Property, and the Florida Property each exceeds six (6) years. The Trustee cites no reason for the court to conclude these delays were reasonable.

Second, the prejudice to Ms. Anderson is evident in the years-long – and in some instances, decades-long – delay in asserting the claim for unjust enrichment.  To raise a defense to the Trustee's claims of unjust enrichment, Ms. Anderson would need to present evidence that she has paid for the benefits she was allegedly unjustly enriched by.  To do so in the case of the Home, the Commercial Property, and the Florida Property would require bank records and other evidence of payment from many years ago.  Additionally, as Ms. Anderson notes in her Motion, Ms. Anderson has structured her financial affairs around the ownership of these properties since the date of the transfer.

To the extent the Trustee asserts that the equitable nature of a laches defense requires clean hands of the party raising the defense, I nonetheless find that the balance of the equities weighs in favor of dismissing Count One as it relates to the Home, the Commercial Property, and the Florida Property because the Trustee has not alleged conduct *on the part of Ms. Anderson* that outweighs the delay and prejudice apparent on the face of the Amended Complaint.

Consistent with this conclusion, I also dismiss the unjust enrichment claim as it relates to the equity Ms. Anderson has accumulated in the three (3) properties.  The Trustee does not propose an intervening date between the transfer of each property and the Petition Date for the court to consider as the period Ms. Anderson was unjustly enriched by the accrual of equity.  Because the claims pertaining to the equity necessarily spring from the transfers of the properties, the delay and prejudice elements are met for the same reasons.  Equitable principles therefore compel that I dismiss the Trustee's

30

unjust enrichment claim as it relates to the Home, the Commercial Property, the Florida Property, and the money resulting in equity in the respective properties.[14]

ii.  The Classic Car Company and the Haunted House Business

Count One as it pertains to the Classic Car Company and the Haunted House Business will proceed.  Preliminarily, the court finds that allegations of the transfer of the two (2) sole proprietorships encompass by implication the assets and liabilities held by the Debtor in his capacity as the sole proprietor of the Classic Car Company and the Haunted House Business and give the Debtor and Ms. Anderson fair notice the Trustee is seeking to recover assets under the umbrella of the sole proprietorship.

The Trustee has alleged Ms. Anderson benefitted from the value of the assets transferred in 2012 from the Debtor in his capacity as the sole proprietor of the Classic Car Company, including the proceeds from auctioning off certain vehicles owned by the Classic Car Company, and that Ms. Anderson did not pay for this benefit.  *See*, AP-ECF No. 40, ¶¶ 28–29, 91-92, 94, 188–189.  Additionally, the Trustee asserts that Ms. Anderson's failure to pay for the Classic Car Company's assets decreased the value of the Debtor's bankruptcy estate.  *See*, AP-ECF No. 40, ¶¶ 192, 195.  Likewise, the Trustee has alleged the assets of the Haunted House Business were transferred from the Debtor to Ms. Anderson in 2013 without Ms. Anderson providing any benefit in return, and that the lack of payment resulted in the diminution of the assets available for distribution to creditors in the Debtor's bankruptcy.  *See*, AP-ECF No. 40, ¶¶ 55–56, 91–92, 94, 188–89, 192, 195.  Each of the elements of unjust enrichment are alleged as they relate to the Trustee's claims pertaining to the Classic Car Company and the Haunted House

---

[14]    As noted, unjust enrichment is subject to a laches defense rather than a statute of limitations defense, and as a result, equitable tolling is inapposite.  *See*, *Reclaimant Corp.*, 332 Conn. at 61.

Business, and the allegations are not barred by laches.  As a result, Count One as it pertains to the Classic Car Company and the Haunted House Business proceeds.

iii.   Money used to purchase the Personal Property

The Trustee has alleged Ms. Anderson received money from the Debtor that she used to purchase the Personal Property and that Ms. Anderson did not give anything of value to the Debtor in return for this unspecified amount of money, resulting in a diminished bankruptcy estate.  *See*, AP-ECF No. 40, ¶¶ 14, 152, 162, 188–90.  Thus, the Trustee has alleged the elements of unjust enrichment with respect to the unspecified sum of money.  Yet, the allegations suffer from the same defect as the money used to acquire equity in the Home, the Commercial Property, and the Florida Property in that the Trustee does not propose a cutoff date and appears to seek discovery from Ms. Anderson pertaining to money received from the Debtor going back decades.  In light of the lack of specificity in the Trustee's allegations about this amount of money and the prejudicial delay evident on the face of the Amended Complaint, I will allow this portion of Count One to proceed as it relates to money used to acquire the Personal Property on or after January 1, 2011.  The claim as it relates to money used to acquire the Personal Property on or before December 31, 2010, is dismissed.

Accordingly, Count One as it pertains to the Home, the Commercial Property, the Florida Property, the equity in each property, and the money used to acquire the Personal Property on or before December 31, 2010, is dismissed.  The portion of Count One relating to the Classic Car Company, the Haunted House Business, and money used to acquire the Personal Property on or after January 1, 2011, proceeds.

32

    b.  Intentional Fraudulent Transfers (Counts 2, 5–6)

      i.  The Classic Car Company and the Haunted House Business

I find the Trustee has adequately pleaded both the circumstances of the fraud and the Debtor's mental state to state an intentional fraudulent transfer claim pertaining to the Classic Car Company and the Haunted House Business under § 548(a)(1)(A) and CUFTA.  The Amended Complaint states the property subject to the transfer is the Classic Car Company, the transfer occurred in 2012, and Ms. Anderson provided no consideration in exchange.  *See*, AP-ECF No. 40, ¶¶ 17–18, 21–23, 29–30.  Likewise, the Trustee has pleaded the Debtor transferred the Haunted House Business to Ms. Anderson in 2013 and received no consideration in return.  *See*, AP-ECF No. 40, ¶¶ 42–43, 45–48, 56–57.

Moreover, I find the Trustee has adequately pleaded facts giving rise to a strong inference of the Debtor's fraudulent intent in transferring the Classic Car Company and the Haunted House Business to Ms. Anderson.  The Trustee's allegations satisfy each of the badges of fraud as follows: (1) Ms. Anderson provided no consideration to the Debtor in exchange for the Classic Car Company and the Haunted House Business, AP-ECF No. 40, ¶¶ 29, 56; (2) Ms. Anderson and the Debtor continue to maintain a close relationship despite their divorce in 1990,[15] AP-ECF No. 40, ¶¶ 11, 14; (3) the Debtor continues to operate and manage the Classic Car Company and the Haunted House Business, and Ms. Anderson uses the profits from the sole proprietorships to provide for

---

[15]    While the court cannot conclude as a matter of law that the Debtor and Ms. Anderson have a common law marriage (as the Trustee asserts), the facts pleaded – *i.e.*, that Ms. Anderson and the Debtor share a residence and hold themselves out as married – support a finding that the Debtor and Ms. Anderson maintain a close associate relationship.  *See*, AP-ECF No. 40, ¶¶ 11, 14; *Loughlin v. Loughlin*, 280 Conn. 632, 643 (Conn. 2006) ("Connecticut, as a matter of public policy, does not recognize common-law marriage.")

the Debtor and their family, AP-ECF No. 40, ¶¶ 14, 40–41, 67–68;  (4) the Debtor had guaranteed a defaulted loan in the amount of $4,000,000, AP-ECF No. 40, ¶ 133; (5) the Debtor and Ms. Anderson have engaged in a series of transactions whereby the Debtor cedes assets to Ms. Anderson to insulate those assets from the Debtor's creditors, *see*, AP-ECF No. 40, ¶¶ 8–170; and (6) the chronology of events beginning with the default on a guaranteed loan and a police investigation into the Debtor and ending with the Debtor's Chapter 7 bankruptcy petition, while various properties, assets, and sums of money are transferred to Ms. Anderson in the interim.  *See*, AP-ECF No. 40, ¶¶ 8–170. These facts, taken together, support an inference of fraudulent intent.

Accordingly, I conclude the Trustee's allegations of intentional fraudulent transfers of the Classic Car Company and the Haunted House Business state a cause of action upon which relief may be granted pursuant to § 548(a)(1)(A) and CUFTA, and those claims will proceed.

ii.  Company-Related Services Transfers

I also find the Trustee has adequately pleaded an intentional fraudulent transfer claim as it relates to the Company-Related Services Transfers.  The Trustee alleges the Debtor has diverted his right to receive compensation for laboring for the benefit of the Classic Car Company and the Haunted House Business to Ms. Anderson.  AP-ECF No. 40, ¶¶ 70–80.  Although the fruits of one's labor theory is premised on reverse veil-piercing of a corporate form (which a sole proprietorship is not), the distinction is immaterial where, as here, the Trustee has alleged the beneficial ownership of the sole proprietorship was transferred to someone else.  As set forth more fully above, the Trustee has alleged sufficient indicia to support an inference of the Debtor's fraudulent intent in transferring

his right to receive compensation to Ms. Anderson, including the fact Ms. Anderson supports the Debtor using the proceeds of the Classic Car Company and the Haunted House Business.  *See*, AP-ECF No. 40, ¶¶ 14, 40–41, 67–68, 70, 76, 133.  As a result, the Trustee's allegations of intentional fraudulent transfers pertaining to the Company-Related Services Transfers state a cause of action upon which relief may be granted pursuant to § 548(a)(1)(A) and CUFTA, and those claims will proceed.

### iii.  The Personal Property and equity in the Home, the Commercial Property, and the Florida Property

To the extent the Trustee seeks to avoid the post-2011 transfer of sums of money used to purchase the Personal Property, the Trustee does not plead facts regarding the timing of this transfer or the consideration or lack thereof provided by Ms. Anderson. Similarly, to the extent the Trustee seeks to avoid the post-2011 transfer of sums of money used to acquire equity in the Home, the Commercial Property, and the Florida Property, the Amended Complaint does not specify the time of transfer or the consideration provided.  As a result, these portions of the intentional fraudulent transfer claim are dismissed.

Accordingly, Counts Two, Five, and Six as they relate to intentional fraudulent transfers of the Classic Car Company, the Haunted House Business, and the Company-Related Services Transfers proceed.  I dismiss the portions of these counts pertaining to the Personal Property and equity in the Home, the Commercial Property, and the Florida Property.

    c.  Constructive Fraudulent Transfers (Counts 3–6)

        i.  The Classic Car Company and the Haunted House Business

I find the Trustee has stated a claim for constructive fraudulent transfer of the Classic Car Company and the Haunted House Business pursuant to § 548(a)(1)(B) and CUFTA.  The Trustee alleges the two (2) requirements for a constructive fraudulent transfer claim: that Ms. Anderson provided less than reasonably equivalent value in exchange for the Classic Car Company and the Haunted House Business and that the Debtor was rendered insolvent as a result of the transfers.  *See*, AP-ECF No. 40, ¶¶ 30, 57, 69.

        ii.  Company-Related Services Transfers

The Trustee has likewise stated a claim for constructive fraudulent transfer of the Company-Related Services Transfers.  By alleging the Debtor transferred his right to receive compensation to Ms. Anderson and in doing so received less than reasonably equivalent value in exchange for his services, and that he was insolvent or became insolvent as a result of transferring the fruits of his labor to Ms. Anderson, the Trustee has stated a claim.  *See*, AP-ECF No. 40, ¶¶ 57, 69, 74–77.  Accordingly, this claim will proceed.

        iii.  The Personal Property and equity in the Home, the Commercial Property, and the Florida Property

The Amended Complaint contains no specific allegations that the post-2011 transfers of money used to purchase the Personal Property, and the post-2011 transfers of money used to acquire equity in the Home, the Commercial Property, and the Florida Property occurred while the Debtor was insolvent or rendered the Debtor insolvent, or

that the Debtor received less than reasonably equivalent value.  Thus, this portion of the constructive fraudulent transfer claim is dismissed.

Thus, Counts Three, Four, Five, and Six proceed as they pertain to the Classic Car Company, the Haunted House Business, and the Company-Related Services Transfers.  The portions of these counts are dismissed as they relate to the post-2011 transfers of money used to purchase the Personal Property, and the post-2011 transfers of money used to acquire equity in the Home, the Commercial Property, and the Florida Property.

### d.  Turnover (Count 7)

To the extent the Trustee has successfully pleaded that the Classic Car Company, the Haunted House Business, and the value of the Company-Related Services Transfers are property of the estate, the Trustee has pleaded the requirements of turnover.

## VI.   CONCLUSION

Consistent with the foregoing, the following claims survive dismissal:[16]

| Count | Claim | Property |
|---|---|---|
| Count One | Unjust Enrichment | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers<br>• Money used to acquire Personal Property on or after January 1, 2011 |
| Count Two | Intentional Fraudulent Transfer | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers |
| Count Three | Constructive Fraudulent Transfer | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers |
| Count Four | Constructive Fraudulent Transfer | • Classic Car Company<br>• Haunted House Business |

---

[16]     I have considered all other arguments offered by the Trustee and Ms. Anderson and find them to be without merit.

| | | • Company-Related Services Transfers |
|---|---|---|
| Count Five | Intentional and Constructive Fraudulent Transfer | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers |
| Count Six | Intentional and Constructive Fraudulent Transfer | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers |
| Count Seven | Turnover | • Classic Car Company<br>• Haunted House Business<br>• Company-Related Services Transfers |

To the extent it grants a motion to dismiss, this is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period.  *See*, Fed.R.Bankr.P. 8001, *et seq.*, Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (2020).

**ACCORDINGLY**, it is hereby

**ORDERED**: That, the Motion, AP-ECF No. 44 is **GRANTED IN PART** and **DENIED IN PART**, and a separate Scheduling Order will enter.

Dated this 27th day of August, 2020, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut