UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-30458 (AMN) |
| | : | |
| WILLIAM M. ANDERSON, III, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| BARBARA H. KATZ, | : | |
| CHAPTER 7 TRUSTEE | : | Adversary Case No.: 17-3008 (AMN) |
| *Plaintiff* | : | |
| v. | : | |
| WILLIAM M. ANDERSON, III, | : | |
| MARY ANN ANDERSON, | : | |
| *Defendants* | : | |
| | : | Re: AP-ECF No. 203 |

## <u>MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT</u>

### *Parties*

| | |
|---|---|
| Barbara H. Katz, Chapter 7 Trustee<br>*Plaintiff* | C. Donald Neville, Esq.<br>Kroll McNamara Evans &<br>Delehanty, LLP<br>65 Memorial Road, Suite 300<br>West Hartford, CT 06107 |
| William M. Anderson, III<br>*Defendant* | *Pro se litigant*<br>c/o George C. Tzepos, Esq.<br>444 Middlebury Road<br>Middlebury, CT 06762 |
| Mary Ann Anderson<br>*Defendant* | Timothy D. Miltenberger, Esq.<br>Cohn Birnbaum & Shea P.C.<br>100 Pearl Street, 12th Floor<br>Hartford, CT 06103 |

## I.    Introduction

William M. Anderson, III (the "debtor" or "William") filed a Chapter 7 bankruptcy petition on March 27, 2015, commencing case number 15-30458 (the "Main Case").  ECF No. 1[1].  On March 10, 2017, Barbara H. Katz, the Chapter 7 Trustee (the "Trustee" or "plaintiff"), commenced this adversary proceeding by filing a complaint against the debtor and Mary Ann Anderson, the debtor's ex-wife ("Mary Ann" and, collectively, the "defendants").  The Trustee claims, generally, that over many years and perhaps decades the defendants engaged in a scheme to evade and mislead creditors by putting assets of William in Mary Ann's name (the "Amended Complaint").  ECF No. 149; AP-ECF No. 40. Familiarity with the court's earlier decision limiting the issues remaining in this adversary proceeding is assumed (the "Dismissal Decision").  *See*, Memorandum of Decision and Order Granting in Part and Denying in Part Motion to Dismiss Amended Complaint, AP-ECF No. 77.

This decision addresses Mary Ann's motion for summary judgment on all seven counts of the Amended Complaint (the "Summary Judgment Motion").  AP-ECF No. 203; *see*, Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56.  The parties submitted competing statements of fact consistent with D.Conn.L.Civ.R. 56, and the court held oral argument on the Summary Judgment Motion.  AP-ECF No. 239.  For the reasons that follow, after construing the facts at this summary judgment stage in the light most favorable to the Trustee, I conclude no material issue of fact remains for trial.  Because the findings and conclusions in this decision necessarily also apply to claims against William, this decision also precludes trial of the Trustee's claims against William.

---

[1]    Citations to the docket in Case No. 15-30458 are noted by "ECF No." Citations to the docket of Adversary Proceeding Case No. 17-03008, are noted by "AP-ECF No."

## II.    Jurisdiction and Venue

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (case administration), (E) (orders to turnover), (H) (fraudulent transfer claims), and (O) (matters affecting liquidation or adjudication of debtor/creditor relationship).  The bankruptcy court has the power to enter a final judgment in this adversary proceeding, subject to traditional rights of appeal.  This adversary proceeding arises under the Main Case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

As necessary, this memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## III.    Procedural History

### a.  The Pending Complaint

The Trustee's Amended Complaint is broadly premised on allegations the defendants tried to evade and mislead creditors by claiming Mary Ann nominally owned property or businesses while William, in fact, retained all actual and equitable ownership. AP-ECF No. 40.  The Trustee alleges such properties and businesses include the sole proprietorships known as Classic Car Restoration ("Classic Car") and Nightmare on Wolcott Street ("Haunted House")[2].  The Trustee also alleges William performed valuable

---

[2]     The court again assumes familiarity with the Dismissal Decision whereby the court concluded because sole proprietorships are not separate entities from their owners, "the allegations of the transfer of the two (2) sole proprietorships encompass by implication the assets and liabilities held by the Debtor in his capacity as the sole proprietor of the Classic Car Company and the Haunted House Business and

work or services that generated income for these businesses, but Mary Ann did not compensate him (the "Company-Related Services Transfers"). AP-ECF No. 40. Finally, the Trustee seeks to recover a sum of money Mary Ann allegedly acquired from William and used to purchase personal property on or after January 1, 2011. AP-ECF No. 40, ¶¶ 151-53; *see also* AP-ECF No. 77.

The Trustee's surviving claims after the Dismissal Decision are summarized as follows:

| Count | Claim | Property |
|-------|-------|----------|
| Count One | Claim for unjust enrichment seeking:<br>• Imposition of constructive trust<br>• Money damages against Mary Ann<br>11 U.S.C. §§ 544, 550 | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers<br>•Money used to acquire Personal Property on or after January 1, 2011 |
| Count Two | Claim for avoidance of intentional fraudulent transfers of assets seeking:<br>• Injunction against disposition by both defendants<br>• Money damages against Mary Ann<br>• Imposition of a constructive trust.<br>Conn.Gen.Stat. § 52-552e(a)(1)<br>11 U.S.C. §§ 544, 550 | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers |
| Count Three | Claim for avoidance of constructive fraudulent transfer of assets seeking:<br>• Injunction against disposition by both defendants<br>• Money damages against Mary Ann<br>• Imposition of a constructive trust.<br>Conn.Gen.Stat. § 52-552e(a)(2) and 52-552h<br>11 U.S.C. §§ 544, 550. | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers |
| Count Four | Claim for avoidance of constructive fraudulent transfers seeking:<br>• Injunctive relief against both defendants<br>• Money damages against Mary Ann<br>• Imposition of a constructive trust.<br>Conn.Gen.Stat. § 52-552f(a)<br>11 U.S.C. §§ 544, 550 | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers |
| Count Five | Claim for fraudulent transfer against Mary Ann.<br>11 U.S.C. §§ 544, 550 | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers |
| Count Six | Claim for intentional and constructive fraudulent transfers against Mary Ann.<br>11 U.S.C. §§ 548, 550 | • Classic Car<br>• Haunted House |

give the Debtor and Mary Ann fair notice the Trustee is seeking to recover assets under the umbrella of the sole proprietorship." AP-ECF No. 77, p. 31.

| | | • Company-Related Services Transfers |
|---|---|---|
| Count Seven | Claim for turnover.<br>11 U.S.C. § 542 | • Classic Car<br>• Haunted House<br>• Company-Related Services Transfers |

### b.  Mary Ann's Motion for Summary Judgment

Mary Ann argues, after discovery, that no genuine issue of material fact requires a trial.  In particular, Mary Ann argues the Trustee has not disputed the central material fact set forth in her affidavit:  that William did not transfer property or services to Mary Ann.  In support, Mary Ann claims the Trustee failed at this summary judgment stage to "(i) [establish the] value [of] the Classic Car Company or the Haunted House Business at any time, (ii) identify a single transfer of an asset from the Debtor to Mary Ann, (iii) identify or value any service provided by William to Mary Ann or any business with which she is affiliated, [or iv] identify any money used by any entity to purchase any personal property held by Mary Ann or identify any personal property allegedly purchased."  AP-ECF No. 204, p. 4.

### c.  The Record at the Summary Judgment Stage

The factual record here includes the Trustee's and Mary Ann's statements pursuant to D.Conn.L.Civ.R. 56(a)(1) and 56(a)(2), affidavits from Mary Ann and the Trustee's counsel, and various exhibits offered by the Trustee.  *See* AP-ECF Nos. 203, 211, 212, 230.

Familiarity with the court's Memorandum of Decision and Order Sustaining in Part and Overruling in Part Defendant's Objection to Exhibits Pursuant to Fed.R.Evid. 802 and 901 (the "Evidence Ruling") is assumed.  AP-ECF No. 230.  Accordingly, the following Exhibits are not part of the record for this decision: AP-ECF No. 212-2, ¶¶ 101-103 (1B); 104-10 (1C); 131-38 (1G); 193-95 (2D); 220-28 (2E); 229-49 (3A); 196-97 (3B); 198-99

(3C); and 357-59 (15A).  Because the plaintiff withdrew exhibits filed at AP-ECF No. 211-12, pp. 111-16 (2C); 254-60 (3D); and 261-64 (3E), these will not be considered.  AP-ECF No. 230.  The court will disregard any portion of the parties' 56(a) Statements that rely on exhibits that were withdrawn or not allowed by the Evidence Ruling.  *See e.g.,* AP-ECF No. 211-1, p. 6-8.

## IV.    Findings of Fact

### a.  Local Rule 56(a) Statements

Under Local Rule 56(a)(1), a party submitting a summary judgment motion must file a "concise statement of each material fact" showing there is no genuine issue to be tried (the "56(a)(1) Statement").  D.Conn.L.Civ.R. 56(a)(1); D.Conn.Bankr.L.R.1001-1. Local Rule 56(a)(2) requires the opposing party to file a responding document stating whether each fact is admitted or denied (the "56(a)(2) Statement").  D.Conn.L.Civ.R. 56(a)(2).  Each material fact in a 56(a)(1) Statement supported by evidence will be admitted unless a fact is controverted or disputed by the 56(a)(2) Statement. D.Conn.L.Civ.R. 56(a)(1).

The parties filed timely Rule 56(a) Statements.[3]  *See*, AP-ECF Nos. 203; 211-1. The plaintiff frequently denied an asserted fact by stating supplementary information rather than denying the asserted fact or proffering factual evidence to controvert it.  *See*, AP-ECF No. 211-1, ¶¶ 2-4, 6, 10, 12, 15-17, 19-23.  Denying facts on this basis, "frustrate[s] [Local] Rule 56(a)'s purpose of clarifying whether a genuine dispute of material fact exists."  *Dingwell v. Cossette*, No. 3:17-CV-01531 (KAD), 2020 WL 5820363,

---

[3]      Pursuant to D.Conn.L.Civ.R. 56(a)(2), the plaintiff could have included "a separate section entitled 'Additional Material Facts' setting forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)(3) any additional facts, not previously set forth in responding to the movant's Local Rule 56(a)(1) Statement, that the party opposing summary judgment contends establish genuine issues of material fact precluding judgment in favor of the moving party."  The Trustee did not include any such Additional Material Facts, and therefore the court is limited to the record provided.

at *3 n. 2 (D. Conn. Sept. 30, 2020).  Where the plaintiff failed to appropriately deny a material fact supported by evidence in the record, that fact is deemed admitted for the purposes of this Memorandum of Decision.  *Miron v. Town of Stratford*, 976 F.Supp.2d 120, 127 (D. Conn. 2013).  Because the plaintiff failed to establish there is a genuine issue of material fact in ¶¶ 2-4, 6, 10, 12, 15-17, and 19-23 of Mary Ann's 56(a)(1) Statement, the facts alleged in those paragraphs are admitted. See, AP-ECF No. 211-1.

### b. Factual Record

Mary Ann has lived at 2 Silver Pond Road in Wolcott, Connecticut for over thirty years.  AP-ECF No. 204, p. 19; AP-ECF No. 211-1, p. 2.  The parties disagree about whether and when William also resided at that address, though resolution of that fact is not material here.  AP-ECF No. 204, p. 19; AP-ECF No. 211-1, p. 2.  Mary Ann and William divorced in 1990.  AP-ECF No. 204, p. 20.  The plaintiff agrees that a divorce decree entered in 1990 but claims multiple times William and Mary Ann "maintained an intimate relationship after the divorce."  AP-ECF No. 211-1, pp. 4, 5, 8, 20.  While the plaintiff argues this fact to support her contention that Mary Ann could not have operated the businesses she claims to own, nothing in the record supports that idea.  AP-ECF No. 211-1, p. 5.

Mary Ann operated sole proprietorships.  AP-ECF No. 203, pp. 21, 23; AP-ECF No. 234.  She founded Classic Car in July of 2007.  AP-ECF No. 203, p. 21.  During relevant times, Classic Car purchased old vehicles, rehabilitated them, and sold them at auction.  AP-ECF No. 203, p. 21.  The record reveals that Mary Ann reported tax losses for Classic Car from 2011 through 2015, as follows:

7

| Year | Gross Income | Net Income |
|------|-------------:|-----------:|
| **2011** | $77,648 | -$254 |
| **2012** | $78,803 | -$5,253 |
| **2013** | $46,504 | -$10,023 |
| **2014** | $54,625 | $426 |
| **2015** | $36,470 | -$40,416 |
| **Total** | $294,050 | -$55,523 |

AP-ECF No. 203, p. 22.

The Trustee admits these amounts were reported on Mary Ann's tax returns but denies – without evidentiary support – any implication that these numbers represent gross or net income.  AP-ECF No. 211-1, p. 17.  The Trustee fails to offer any evidence disputing the net income amounts Mary Ann reported.  The court notes no tax returns are included in the record here.  *See* AP-ECF No. 239, pp. 47-48.

Mary Ann began operating her second sole proprietorship, the Haunted House, on September 12, 2012.  AP-ECF No. 203, p. 22.  In the years before William's bankruptcy filing, the gross receipts of the Haunted House were $4,579.  AP-ECF No. 203, p. 23.  The Trustee provides no evidence disputing this fact.  AP-ECF No. 211-1, p. 22.

While the Trustee consistently argues both Classic Car and the Haunted House are primarily owned and operated by the debtor, rather than Mary Ann, no evidence surviving the Evidence Ruling was proffered to dispute Mary Ann's claim that she alone owns the sole proprietorships.  *See* AP-ECF No. 211-1, pp. 5-8.  The Trustee alleges the debtor worked at both Classic Car and the Haunted House and did not receive sufficient compensation for his services from Mary Ann.  AP-ECF No. 211-1, p. 2.  Again, no evidence was offered to demonstrate William did any work for these businesses, or even

that any work was done at these businesses by anyone.  *See* AP-ECF No. 239, pp. 46-49; AP-ECF No. 211-1, pp. 5-8, 16-17.

The Trustee also argues the debtor fraudulently transferred Classic Car and the Haunted House to Mary Ann "for little to no money so the debtor's creditors would not be able to reach" those businesses.  AP-ECF No. 211, p. 2.  The Trustee, however, does not provide evidence in her 56(a)(2) Statement to establish such transfers were made during the statutory fraudulent transfer period, or at any other time.  Indeed, no attempt is made by the Trustee to establish a transfer at all.  To demonstrate, the following exchange occurred during oral argument on the Summary Judgment Motion:

> COURT:      [Y]ou have to point me to evidence that from…2011 to 2015 there was a transfer from [debtor] to [Mary Ann] of Classic Car Restoration. What's your evidence in this record, in the summary judgment record?
>
> NEVILLE:    …I don't have it is the short answer.
>
> COURT:      Then how do you defeat the summary judgment motion?
>
> NEVILLE:    Because the only evidence you have that there was not a transfer is the conclusory statement by Mrs. Anderson that there wasn't.  Which means there's no documents offered –
>
> COURT:      But at this point in the proceeding it's your burden to come forward with some evidence to create doubt about a material fact. That is a material fact.
>                 …
>                 You have not produced in evidence in this summary judgment proceeding…testimony of anyone that says that there was a transfer.
>
> NEVILLE:    That's correct.
>
> COURT:      And you don't have any documents that support the idea that [Mr.] Anderson was the owner of [Classic Car] during that 4-year period.

AP-ECF No. 239, pp. 36-37.

In response to that last statement from the court, Attorney Neville noted he was relying on Exhibits 1B, 3B, 3C, 1G, 2E, and 3A; however, none of those Exhibits were

admitted into the summary judgment record.  AP-ECF No. 239, pp. 38-39, 41; AP-ECF No. 230.  Attorney Neville later admitted he had no evidence for the transfer of the Haunted House from the debtor to Mary Ann after 2013, and stated "it's a continuation of the evidence with respect to Classic Car Restoration."  AP-ECF No. 239, p. 44.

The parties also disagreed about how Classic Car was initially funded by Mary Ann and how much work William and Mary Ann's sons performed for Classic Car.  *See* AP-ECF No. 203, pp. 2-3; AP-ECF No. 211-1, pp. 9-14.

The Trustee failed to put into the record on summary judgment any evidence she might offer at trial to dispute these facts.

## V.      Applicable Law

### a.  Summary Judgment

The initial burden at the summary judgment stage rests with the movant, who must demonstrate no genuine issue of material fact exists.  *See*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 122 (2d Cir. 2013); Fed.R.Civ.P. 56(c).  The moving party must provide "evidence on each element of its claim or defense," after which "the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Importantly,

> [T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading to establish the existence of a disputed fact.  [M]ere speculation or conjecture as to the true nature of the facts will not suffice.  Nor will wholly implausible claims or bald assertions that are unsupported by evidence.  [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Laber v. Long View R.V., Inc.*, 454 F. Supp. 3d 158, 168 (D. Conn. 2020) (internal citations and quotation marks omitted).

Viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, a motion for summary judgment may be granted only if "no reasonable [fact finder] could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also*, *Anderson*, 477 U.S. at 255 (at summary judgment stage, court cannot weigh evidence or make credibility determinations).

A genuine issue of fact has been interpreted to mean a genuine issue of material fact.  *See*, *Anderson*, 477 U.S. at 247–48 ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact"). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law."  *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting, *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  The governing law "applied to the case determines which facts are material for purposes of deciding a summary judgment motion."  *Diamond v. Sokol*, 468 F. Supp. 2d 626, 632 (S.D.N.Y. 2006).

Summary judgment is warranted if the pleadings, the discovery, and disclosure materials, along with any admissible affidavits, demonstrate there is no genuine issue of material fact necessitating resolution at trial. Fed.R.Civ.P. 56(c); *People's United Bank v. Culver*, 17-CV-00723 (VAB), 2020 WL 6546006, at *3 (D. Conn. Nov. 6, 2020).

### b. Unjust Enrichment and Constructive Trust

In Count One of her Amended Complaint, the Trustee claims unjust enrichment and seeks the imposition of a constructive trust and money damages against Mary Ann. Under Connecticut law, to assert a claim of unjust enrichment against Mary Ann, the Trustee must plead (1) Mary Ann was benefited, (2) Mary Ann unjustly did not pay the Trustee or someone on whose behalf the Trustee may now sue for the benefits, and (3) the failure of payment was to the Trustee's detriment. *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (Conn. 2006); *Michel v. Yale Univ.*, No. 3:20-CV-01080 (JCH), 2023 WL 1350220 at *6 (D. Conn. Jan. 30, 2023).

"Constructive trust is an equitable remedy which may be imposed in circumstances where unjust enrichment has occurred and certain other requirements are met. The elements of a constructive trust are the intent of a third party to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. A constructive trust is created by operation of law when these elements are present." *Reed v. McCready*, No. CV136032487S, 2014 WL 2854001 at *3 (Conn. Super. Ct. May 16, 2014) (citing *Gulack v. Gulack*, 30 Conn.App. 305, 310 (1993)).

### c. Avoidance of Transfers Pursuant to § 544 (Trustee as lien creditor and as successor to certain creditors and purchasers), § 548 (Fraudulent transfers and obligations), and § 550 (Liability of transferee of avoided transfer)

The "strong arm powers" granted by § 544 allow a trustee to avoid transfers as a lien creditor of the debtor and as a successor to certain creditors and purchasers, including bona fide purchasers of real property. *See*, 11 U.S.C. § 544(a). A trustee may also avoid specified transfers under state law and recover the proceeds for the bankruptcy

estate.  11 U.S.C. §§ 544(b)(1), 550.  In Counts Two, Three, and Four of the Amended Complaint, the Trustee seeks to avoid the transfers of property to Mary Ann under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn.Gen.Stat. §§ 52-552a, *et seq.*, which creates causes of action and remedies for intentional (or actual) fraudulent transfers and constructive fraudulent transfers.

CUFTA provides that transfer avoidance is available to a trustee if she has the status and rights of a "creditor" whose claim arose "before the transaction was made." *In re Carrozzella & Richardson*, 302 B.R. 415, 420 (Bankr. D. Conn. 2003).  In other words, a trustee has standing to bring a CUFTA claim if the record reveals "there was at least one Actual Creditor whose claim arose *prior* to the [p]ayments." *Id.*  Here, the record in the Main Case reveals there were creditors whose claims arose prior to the alleged transfers sought to be avoided in this proceeding.  The court takes judicial notice of the proofs of claim filed in the Main Case.

Like CUFTA, the Bankruptcy Code permits a trustee to avoid intentional and constructive fraudulent transfers pursuant to § 548.  Under § 550, a trustee may recover property that was fraudulently transferred applying CUFTA, for the benefit of the bankruptcy estate.  Other than the four-year look-back period provided by CUFTA – as opposed to the two-year look-back period set forth in § 548 – the standards for avoiding fraudulent transfers under the two statutes are not "materially different." *In re Carrozzella*, 302 B.R. at 419; *compare*, Conn.Gen.Stat. § 52-552j with 11 U.S.C. § 548(a)(1).

### 1.  Intentional Fraudulent Transfer Claims

Count Two of the Amended Complaint seeks relief under Conn.Gen.Stat. § 52-552e(a)(1) which allows a creditor to avoid intentional fraudulent transfers and provides as follows:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor. Conn.Gen.Stat. § 52-552e(a).

In Count Six of the Amended Complaint, the Trustee seeks to avoid the allegedly intentional fraudulent transfers from the Debtor to Mary Ann under § 548, which provides the Trustee may avoid a transfer of "an interest of the debtor in property" made within two (2) years of the Petition Date if she proves the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud" the debtor's creditors. 11 U.S.C. § 548(a)(1)(A).

The remedies available to a trustee who establishes the existence of a fraudulent transfer are set forth in § 550, providing in pertinent part:

(a)    [T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

(b)    The trustee may not recover under section (a)(2) of this section from—(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee.
11 U.S.C. § 550.

To overcome the difficulty inherent in establishing fraudulent intent, a plaintiff "may rely on 'badges of fraud'—'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" *In re Bos. Generating LLC*, 617 B.R. 442, 472 (Bankr. S.D.N.Y. June 18, 2020) (quoting *Techno-Comp. Inc. v. Arcabascio*, 130 F. Supp.3d 734, 745 (E.D.N.Y. 2015)). "Badges of fraud" include:

(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions of conduct after the incurring

14

of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.
*In re Kupersmith*, 614 B.R. 428, 438 (Bankr. D. Conn. 2020) (quoting *In re Kaiser*, 722 F.2d at 1574, 1582–83 (2d Cir. 1983)).

### 2.   Constructive Fraudulent Transfer Claims

In Count Three, the Amended Complaint seeks relief under Conn.Gen.Stat. § 52-552e(a)(2) and 52-552h.   Count Four seeks relief under Conn.Gen.Stat. § 52-552f(a). Both Counts address constructively fraudulent transfers.   To recover property subject to a constructive fraudulent transfer under Conn. Gen. Stat. § 52-552e(a)(2), the Trustee must satisfy the following requirements:

> (a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
> Conn.Gen.Stat. § 52-552e(a).

To recover property subject to a constructive fraudulent transfer under Conn. Gen. Stat. § 52-552f, the Trustee must satisfy the following requirements:

> (a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (b)     A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.
> Conn. Gen. Stat. § 52-552f.

In addition to permitting avoidance of intentional fraudulent transfers, § 548 allows the Trustee to avoid constructive fraudulent transfers.  *See*, 11 U.S.C. § 548(a)(1)(B).  A transfer of a debtor's interest in property is constructively fraudulent if the debtor:

> (i)      received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)     (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
>
> 11 U.S.C. § 548(a)(1)(B).

Conn.Gen.Stat. § 52-552h governs the remedies that may be available to the Trustee upon establishing her entitlement to relief.  It states:

> (a) In an action for relief against a transfer or obligation under sections 52- 552a to 52-552l, inclusive, a creditor, subject to the limitations in section 52- 552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 903a; (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (C) any other relief the circumstances may require.
>
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.
>
> Conn. Gen. Stat. § 52-552h.

## 3.      Interest in Property Subject to Transfer

Property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," including earnings from pre- petition services.  11 U.S.C. § 541(a)(1); *see*, 11 U.S.C. § 541(a)(6) (excluding post-

petition "earnings from services performed by an individual debtor" from the property of the bankruptcy estate).

Under the Bankruptcy Code, a "transfer" broadly embraces "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D).  "[T]he hallmark of a 'transfer' is a change in the rights of the transferor with respect to the property after the transaction."  2 Collier on Bankruptcy ¶ 101.54 (16th ed. 2020) (quoting *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 338 (Bankr. N.D. Cal. 2009)).  "In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law."  *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).

CUFTA likewise defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance."  Conn. Gen. Stat. § 52-552b(12).  CUFTA defines an "asset" as "property of a debtor," excluding "[p]roperty to the extent it is encumbered by a valid lien, (B) property to the extent it is generally exempt under nonbankruptcy law, or (C) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant."  Conn. Gen. Stat. § 52-552b(2).  "Property" is defined as "anything that may be the subject of ownership." Conn. Gen. Stat. § 52-552b(10).  Black's Law Dictionary similarly defines "property" as, "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised."  Property Definition, Black's Law Dictionary (11th ed. 2019).  Thus, to avoid fraudulent transfers under § 548 and CUFTA, the Trustee must establish the debtor held an ownership interest

17

in property recognized under Connecticut law and he relinquished that ownership interest to Mary Ann through a transfer.

Connecticut courts have recognized "the fraud of diversion of the fruits of one's labor" and granted relief under CUFTA on this theory. *Cadle Co. v. Steiner*, No. CV054018721S, 2011 WL 925450, at *2–7 (Conn. Super. Feb. 10, 2011) (internal quotations omitted); *see*, *Cadle Co. v. Zubretsky*, No. CV040832477S, 2008 WL 441935, at *5–6 (Conn. Super. Jan. 30, 2008). Although the underpinnings of this doctrine remain unclear, the fruits of one's labor theory appears derived from the concept of reverse veil-piercing, which in effect restrains individuals from secreting assets in a corporate form. *See*, *Steiner*, 2011 WL 925450, at *2; *see also, Cadle Co. v. Ogalin*, 495 F. Supp. 2d 278, 284–87 (D. Conn. 2007). In the bankruptcy context, debtors found to have diverted the fruits of their labor have been denied discharge pursuant to 11 U.S.C. § 727(a)(2)(A) upon a finding that property of the debtor was transferred with intent to hinder, delay, or defraud a creditor. *See, e.g., In re Klutchko*, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005) ("[N]umerous courts have found that debtors who transferred all of their salary, or their right to receive salary, to a family member or to a corporation owned by a family member, yet retained the benefits of such salary, as here, should be denied a discharge."); *In re Ogalin*, 303 B.R. 552, 561 (Bankr. D. Conn. 2004).[4]

### e.    Turnover

Count Seven of the Trustee's Amended Complaint sets forth a claim for turnover. As set forth in § 542(b), a trustee may compel an entity in possession of property of the estate to turn over that property to the trustee. See, 11 U.S.C. § 542(b). To prevail in an

---

[4]    Here, the debtor was denied his Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(3). *See, The Cadle Co. v. William M. Anderson,* A.P. Case No. 16-3033, ECF No. 211, Main Case, ECF No. 176.

action seeking turnover of estate property, the Trustee must establish: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442, 460 (Bankr. E.D.N.Y. 2018); *see also*, 5 Collier on Bankruptcy ¶ 542.03 (16th ed. 2019). "Fraudulently transferred property does not, however, become property of the estate until after it has been recovered." *Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir.1992)).

### f. *Sua Sponte* Grant of Summary Judgment on Claims Against a Co-Defendant

A court may *sua sponte* grant summary judgment when a party who would oppose such relief has had a fair opportunity to demonstrate there is a genuine issue of material fact requiring a trial. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012) ("In granting summary judgment *sua sponte* ... a district court must determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.") (quoting *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011)); *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114–15 (2d Cir. 1999) ("Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law"). *See also CJ Prod. LLC v. BTC Enterprises LLC,* No. 10 CIV. 5878 KBF, 2012 WL 1999829 at *6 (S.D.N.Y. June 1, 2012)

19

(*sua sponte* granting summary judgment against a claim that was "the mirror image of the…claim on which plaintiffs did move" and summary judgment was granted).

## VI.      Discussion

After considering the record here, including admissions made during oral argument, and having drawn all inferences in favor of the plaintiff, the court is unable to find a genuine issue of material fact requiring a trial.  Of course, the parties do not agree on all facts.  But, there is no *material* fact – one that would cause a factfinder to reach a different conclusion – that is in genuine dispute.

Notably, Mary Ann's statements that she created and continuously owned and operated the Classic Car and Haunted House sole proprietorships are unopposed by the Trustee.  While the Trustee questions Mary Ann's credibility, the role of the court at the summary judgment stage is not to weigh credibility, but rather to determine whether there is evidence countering Mary Ann's statements.  Here, there is not.

The Trustee did not proffer any evidence disputing that essential claim, and, failed to provide evidence of a transfer of either of the sole proprietorships from William to Mary Ann.  The Trustee offered no evidence surviving the Evidence Ruling to substantiate the Trustee's theory that William worked for those businesses and earned compensation that was not paid.  Finally, there was no evidence introduced disputing Mary Ann's affidavit that she did not purchase personal property using money from William Anderson after January 1, 2011 (the relevant 4 year period for a state law fraudulent transfer claim).

Applying the relevant law, after review of the entire record, and, drawing all inferences in favor of the Trustee, the court cannot conclude there is a genuine issue of material fact that requires a trial.

### a. Count One: Unjust Enrichment

As noted, to assert a claim of unjust enrichment requires evidence that, (1) Mary Ann was benefited, (2) Mary Ann unjustly did not pay the Trustee or someone on whose behalf the Trustee may now sue for the benefits, and (3) the failure of payment was to the Trustee's detriment. *Vertex*, 278 Conn. at 573. Here, during argument on the Summary Judgment Motion, the Trustee acknowledged she has no evidence – and did not present any through her Rule 56(b)(2) statement – disputing Mary Ann's sworn statement that William provided her no benefit as alleged in the Amended Complaint. The Trustee's unsupported argument to the contrary fails to create a disputed material fact requiring a trial.

The Trustee's theory that William and Mary Ann maintained a "marriage-like" or "intimate relationship" after their divorce decree entered is unsupported by the evidence, and in any event, has no bearing on Mary Ann's ability to form and run businesses in her own name. Likewise, arguments that William and Mary Ann maintained a relationship and perhaps resided together at times do not demonstrate that William ever owned either business, ever worked for either business, or ever transferred those businesses, or assets thereof, to Mary Ann.

Certainly, there are cases within the jurisprudence of fraudulent transfer avoidance that conclude spouses, former spouses, friends, or business partners conducted their financial affairs in a manner intended to evade creditors. Courts have looked past accounting practices that obfuscate the source and purpose of payments, the manner of holding accounts, and misleading labels used to describe financial transactions. Review of those cases reflects robust evidentiary records, including bank account records, real property title records, tax return information, and evidence of income streams somehow

diverted, among other evidence.  Here, the record is devoid of any compelling evidence supporting the story the Trustee wishes to tell.  The court has no doubt William has not paid the creditors the Trustee is charged to represent in pursuing these claims.

But, here, the Trustee has not disputed with admissible evidence the central assertions in Mary Ann's affidavit that there was no transfer by William to her of property or services, at any point in time relevant to the Trustee's legal theories.

Because the Trustee is unable to provide evidence raising a genuine issue of fact relevant to Count One, there is no reason to proceed to trial on the unjust enrichment claim and judgment will enter in favor of Mary Ann on Count One.

### b. Counts Two, Three, Four, Five and Six: Fraudulent Transfer Claims

### 1. Counts Two, Three and Four: CUFTA Claims

Counts Two through Four of the Trustee's Amended Complaint each seek avoidance of fraudulent transfers and injunctive relief against both defendants, money damages against Mary Ann, and imposition of a constructive trust on Mary Ann's assets.

To support a conclusion that there is a material fact in dispute, the admissible evidence surviving the Evidence Ruling must show William held an ownership interest in property, and he relinquished that ownership interest to Mary Ann through a transfer.  But as noted, the Trustee can show no such thing.  The Trustee failed to offer evidence disputing Mary Ann's affidavit.  No evidence disputing the contention that Mary Ann owned Classic Car and the Haunted House, and that William did not transfer any ownership interest in those sole proprietorships to Mary Ann.  Similarly, the evidence fails to suggest William performed valuable work or services for these businesses that was not compensated.  As a result, the Trustee failed to meet her burden to raise a genuine issue of material fact requiring a trial for Counts Two, Three, and Four.

### 2. Counts Five and Six: Bankruptcy Code Transfer Claims

Counts Five and Six rely on the fraudulent transfer sections of the Bankruptcy Code. 11 U.S.C. §§ 544, 548. As with the CUFTA claims, each of these claims require evidence of a transfer from William to Mary Ann. Because none of the evidence surviving the Evidence Ruling raised a genuine issue of material fact from which a reasonable factfinder could conclude that William ever owned Classic Car or the Haunted House, or that he transferred any ownership interest to Mary Ann, no trial is required for Counts Five or Six, and the court need not reach the other elements of the fraudulent transfer claims. Judgment will enter in favor of Mary Ann as to Counts Five and Six.

### c. Count Seven: Turnover

Because the Trustee was unable to dispute Mary Ann's assertion under oath that she holds no property of the bankruptcy estate, and as a result of the court's rulings regarding Counts One through Six, the claim for turnover in Count Seven does not require a trial. Judgment will enter in favor of Mary Ann as to Count Seven.

### d. Claims Against William

Because the Trustee was unable to raise a genuine issue of material fact disputing Mary Ann's sworn statement that she received neither property nor a benefit from William during the time periods relevant to the Amended Complaint, it stands to reason the Trustee cannot raise a dispute to the proposition that there was no transfer from William to Mary Ann. *See* AP-ECF No. 239, pp. 45-46. In responding to Mary Ann's motion for summary judgment, the Trustee had the same incentive to produce evidence that would demonstrate a transfer from William to Mary Ann that she would have had in an eventual trial against William. Here, the Trustee had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried respecting transfers

from William to Mary Ann, and the other factors addressed here.  Upon this record, I am persuaded that all of the evidentiary materials the Trustee might submit in response to a motion for summary judgment by William are before the court.  Because those materials fail to create a dispute as to whether a transfer from William occurred, and because no reasonable factfinder could conclude William made a transfer to Mary Ann, a grant of summary judgment as to William is warranted.  The court will *sua sponte* grant summary judgment in favor of William on Counts Two, Three, and Four, and a judgment will enter.

### VII.    Conclusion

Because the court concludes there is no genuine issue of material fact, the Summary Judgment Motion will be granted.  Judgment will enter in favor of defendants Mary Ann Anderson and William M. Anderson, III, and against the Trustee.

All other arguments made have been considered and determined to be without merit.

This is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period. *See*, Fed.R.Bankr.P. 8001, et seq., Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (2020); *see*, Fed.R.Bankr.P. 7008, 7012(b).

Dated this 23rd day of March, 2023, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut